This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 134
The People &c.,
            Appellant,
        v.
Alexis Ocasio,
            Respondent.


            Marianne Stracquadanio, for appellant.
            Paul A. Paterson, for respondent.


STEIN, J.:

        Defendant was charged with one count of criminal possession of a weapon in the fourth degree (see Penal Law § 265.01 [1]). The accusatory instrument alleged that a police officer observed defendant with a "rubber gripped, metal, extendable baton (billy club)" in his rear pants pocket. The

- 1 -

officer averred -- based on his training and experience -- that "said baton device is designed primarily as a weapon, consisting of a tubular, metal body with a rubber grip and extendable feature and used to inflict serious injury upon a person by striking or choking."  Defendant moved to dismiss the accusatory instrument as facially insufficient.  Criminal Court granted defendant's motion, concluding that the allegations describing the object possessed by defendant were insufficient to charge him with possessing a billy within the meaning of Penal Law § 265.01 (1).  The Appellate Term affirmed (48 Misc 3d 127[A] [App Term, First Dept 2015]).  A Judge of this Court granted the People leave to appeal (26 NY3d 970 [2015]), and we now reverse.

To be facially sufficient, the factual allegations of a complaint or information, together with those of any supporting depositions, must "provide reasonable cause to believe that the defendant committed the offense charged" in the instrument (CPL 100.40 [1] [b], [4] [b]; see People v Kalin, 12 NY3d 225, 228 [2009]).  A misdemeanor information must also contain "[n]on-hearsay allegations . . . [which] establish, if true, every element of the offense charged and the defendant's commission thereof" (CPL 100.40 [1] [c]; see People v Smalls, 26 NY3d 1064, 1066 [2015]).  We have oft stated that, "'[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense,

they should be given a fair and not overly restrictive or technical reading'" (Smalls, 26 NY3d at 1066-1067, quoting People v Casey, 95 NY2d 354, 360 [2000]).

Here, defendant argues that the accusatory instrument is facially insufficient because the object described therein does not constitute a "billy" under Penal Law § 265.01 (1).  More specifically, he contends that the accusatory instrument describes the object as being "metal" and "extendable," whereas, in his view, the statutory term "billy" refers only to short, wooden clubs of a fixed length.

The starting point for our analysis is the statutory language in question (see People v Golo, 26 NY3d 358, 361 [2015]).  Under Penal Law § 265.01 (1), a person commits the offense of criminal possession of a weapon in the fourth degree when he or she possesses a "billy."  The legislative prohibition on billies was enacted in 1866 (see L 1866, ch 716).[1]  At that time, "billies" or "billy clubs" were generally comprised of wood.  The Penal Law does not define the term "billy," wooden or otherwise, but we recognized, over a century ago, that the weapons prohibited by section 265.01 (1), including billies, had a "well-understood character" (People v Persce, 204 NY 397, 402

--------

[1]  In 1866, the relevant statute did not criminalize mere possession of the listed weapons (see L 1866, ch 716).  The Legislature amended the statute in 1905 to make possession of the enumerated weapons, including a "billy," a strict liability offense (see L 1905, ch 92 § 2).

[1912]).  As commonly occurs with weaponry, however, technological advances throughout the years have resulted in modifications to the traditional wooden billy.  Today, such weapons, often referred to as "batons," may be comprised of metal or synthetic materials, and variations include either fixed length or "extendable" instruments.  The issue before us on this appeal distills to whether the "well-understood character" (id.) of a "billy," as used in Penal Law § 265.01 (1), encompasses an extendable, metal baton.

Because the Penal Law contains no definition of "billy," we must give the term its "ordinary" and "commonly understood" meaning (People v Versaggi, 83 NY2d 123, 129 [1994]; see People v Morales, 20 NY3d 240, 247 [2012]; People v Quinto, 18 NY3d 409, 417 [2012]).  In determining the meaning of statutory language, we "have regarded dictionary definitions as useful guideposts" (Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016]; see e.g. Versaggi, 83 NY2d at 129).  To that end, a billy has been defined as a "small bludgeon that may be carried in the pocket; a club; especially a policeman's club" (Black's Law Dictionary, at 213 [4th ed 1951]).  Although some dictionaries note that a billy is usually a wooden instrument (see e.g. Merriam-Webster's Collegiate Dictionary [11th ed 2003], at 122), the definitions are not limited thereto, and dictionary definitions generally recognize that the term "baton" is synonymous with the word "billy" or "billy club" (see e.g.

Webster's Unabridged Dictionary, at 207 [2d ed 2001]; Merriam-Webster, http://www.merriam-webster.com/dictionary/billy%20club [accessed Oct. 11, 2016]).

Notably, case law in this state has recognized that the terms "nightstick" and "baton" may be interchangeable with the term "billy" (see People v Talbert, 107 AD2d 842, 843 [3d Dept 1985] [defining billy as a "heavy wooden stick with a handle grip which, from its appearance, is designed to be used to strike an individual and not for other lawful purposes" but recognizing that "a policeman's nightstick or billy club is clearly a billy"]; People v Schoonmaker, 40 AD2d 1066, 1066-1067 [3d Dept 1972] [policeman's club, referred to as a "baton," "fits any standard definition of the term 'billy'"]). Likewise, courts in other jurisdictions have held, when interpreting criminal statutes, that a modern-day collapsible, metal baton falls within the common definition of a billy (see Shahit v City of Detroit Police Officer Tosqui, 2005 WL 1345413, at *14-15, 2005 US Dist LEXIS 44942, *47-48 [ED Mich June 1, 2005] [collecting definitions], affd sub nom Shahit v Tosqui 192 Fed Appx 382 [6th Cir 2006]; People v Mercer, 42 Cal App 4th Supp 1, 5, 49 Cal Rptr 2d 728, 730 [Cal App Dept Super Ct 1995]).

As the People point out, Penal Law § 265.20 (b) also lends support to their position that a "baton" may qualify as a type of billy under Penal Law § 265.01 (1). This statute was amended in 1979 in response to an Appellate Division decision

equating a police "baton" to a "billy" (L 1979, ch 667; see Memorandum in Support, Bill Jacket, L 1979, ch 667; Schoonmaker, 40 AD2d at 1066-1067).  Concerned that the carrying of batons by auxiliary police officers would violate Penal Law § 265.01 (1), the Legislature enacted section 265.20 (b) to create an exception, which states, in relevant part, that the prohibition against possessing a billy set forth in section 265.01 "shall not apply to possession of that type of billy commonly known as a 'police baton'" of specified dimensions if possessed by auxiliary police officers in certain cities (Penal Law § 265.20 [b] [emphasis added]; see Memorandum in Support, Bill Jacket, L 1979, ch 667).  While we are mindful that Penal Law § 265.01 (1) should be interpreted narrowly in light of the absence of an intent element, this language in section 265.20 (b) -- which must be harmonized and interpreted consistently with Penal Law § 265.01 -- plainly demonstrates that the Legislature considered "batons" that are designed as weapons to be a "type of billy" (Penal Law § 265.20 [b]; see generally McKinney's Cons Laws of NY, Book 1, Statutes § 97).[2]

_____

[2]  To the extent the dissent implies that the Legislature's failure to enact a 2008 proposed amendment adding "collapsible batons" to Penal Law § 265.01 (1) supports its position that the existing prohibition on "billies" does not include collapsible batons, we note that "inaction by the Legislature is inconclusive in determining legislative intent" (Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 363 [1994]; Clark v Cuomo, 66 NY2d 185, 190-191 [1985]) and such inaction is susceptible to varying interpretations.  In any event, more recently proposed legislation arguably suggests

The common thread, consistent with the general understanding of the term, is that a "billy" is a cylindrical or rounded, rigid, club or baton with a handle grip which, from its appearance and inherent characteristics, is designed to be used as a striking weapon and not for other lawful purposes.[3]  Such a definition or description does not hinge on the type of material of which the billy is comprised, as is plain from the absence of any statutory language limiting the term "billy" to a specific material.  Indeed, although the Legislature has banned some weapons made of a specific material, it has not done so with the "billy."  For example, Penal Law § 265.01 (1) initially prohibited only "metal" knuckles, but was later amended to also

_____

that at least some of the members of the Legislature interpret the prohibition on "billies" to include "collapsible batons"; that legislation would amend Penal Law § 265.20 (b) to expressly permit auxiliary police officers to carry "collapsible batons" by exempting them from application of the prohibition on billies in Penal Law § 265.01 (1) (see 2015 NY Senate Bill S1142; 2015 NY Assembly Bill A59).

[3]  Contrary to the dissent's assertion, this definition does not render superfluous the inclusion of the terms blackjack, bludgeon, and sandclub in Penal Law § 265.01 (1).  While an in-depth discussion of the definitions of such weapons is outside of the scope of our holding in this case, it suffices to note that such instruments have defining characteristics that distinguish them from billies (see generally People v McPherson, 220 NY 123, 125 [1917] [a bludgeon has one heavier or thicker end]; see People v Guevara, 86 Misc 2d 1044, 1045 [Bronx County, Crim Ct 1976] [a blackjack has a characteristically flexible handle]; see also Black's Law Dictionary, at 1507 [4th ed 1951] [a sandbag is defined as "[a] tube of strong, *flexible* material filled with sand" (emphasis added)]).

ban "plastic" knuckles -- an amendment made necessary by the
Legislature's original qualification of the term "knuckles" as
being comprised of "metal."  Absent such an amendment, an
interpretation of "metal" knuckles as including "plastic" would
conflict with the plain language of the statute.  By comparison,
the Legislature has never prohibited only "wooden" billies -- or,
as the dissent suggests, "wooden club[s]" (dis op., at 5) --
signaling that its intended definition is not confined to objects
made out of a particular material, as defendant would have us
hold.  Unquestionably, a billy made of metal or other synthetic
material remains a billy under the statute in accordance with the
ordinary meaning of the term.  In so concluding, we do not read
the relevant statute "broadly" (dis op., at 6 n 2) but, rather,
give effect to the plain meaning of the statutory language, as
the term "billy" is commonly understood.

        Similarly, the collapsible or extendable nature of the
instrument described in the accusatory instrument does not
meaningfully change the essence, functionality, or inherent
characteristics of the object such that the baton should be
considered a weapon separate and distinct from a billy.
Initially, we note that the common definitions of the term
"billy" do not specifically require that the instrument be of
fixed length, as the dissent assumes.  Moreover, to conclude that
the mere fact that a billy is collapsible or extendible renders
it a different weapon altogether would produce an absurd result

whereby, absent a specific statutory amendment, minor modifications to an instrument that do not alter its general characteristics, purpose, or primary use and function as a weapon -- modifications which incidentally may, as here, actually render a weapon more dangerous or easily concealed -- would insulate the possessor from criminal liability (see People v Garson, 6 NY3d 604, 614 [2006] ["we must interpret a statute so as to avoid an unreasonable or absurd application of the law" (internal quotations omitted)]).

In our view, the foregoing leads to the conclusion that the only plausible interpretation of the term "billy" encompasses a collapsible metal baton (see People v Green, 68 NY2d 151, 153 [1986] [noting that, while the interpretation of a criminal statute that is more favorable to defendant should be adopted where there are two plausible constructions, "the core question always remains that of legislative intent"]). Our conclusion in this regard does not rest -- as the dissent suggests -- on whether or not law enforcement personnel has chosen to use this particular type of instrument. Rather, our determination follows from the common understanding of the term "billy" and our view that the baton at issue here fits comfortably within the definition thereof. Therefore, we hold that the accusatory instrument alleging that defendant possessed a metal, extendable striking weapon with a handle grip, was sufficient to charge him with possessing a "billy" under Penal Law § 265.01 (1) so as to

provide sufficient notice for him to prepare a defense and to protect him from multiple prosecutions.  Defendant raises no preserved constitutional challenge to Penal Law § 265.01 (1) as so interpreted.[4]

Accordingly, the order of the Appellate Term should be reversed and defendant's motion to dismiss the accusatory instrument denied.

---

[4]  For that reason, any challenge based on the void for vagueness doctrine (see generally People v Cruz, 48 NY2d 419, 423 [1979]), addressed by the dissent, is not properly before us.

People v Alexis Ocasio

No. 134


RIVERA, J.(dissenting):

The People equate a modern-day, rubber-gripped, metal extendable baton with a centuries-old solid wooden club of fixed length known as a "billy" for purposes of criminal liability under Penal Law § 265.01 (1). While both billies and extendable batons have been used as police batons at different points in history, they are distinct objects. As unpersuasive as the People's argument that, in the absence of a legislative definition, we may transmute the term "billy," whose definition has remained stable since the 1850s, into "police baton," is the majority's conclusion that the Legislature intended the billy to include batons, regardless of functional design and construction. The Legislature has not amended the statute to permit this expansive definition, despite opportunity to do so, and faced with a statute which creates a category of weapons that are per se illegal to possess, we must narrowly construe its terms. Therefore, I dissent and would affirm the dismissal of the accusatory instrument.

Penal Law § 265.01 (1), provides:

"A person is guilty of criminal possession of a weapon in the fourth degree when: (1) [such person] possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife,

- 1 -

metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or 'Kung Fu star'" (Penal Law § 265.01 [1]).

The statute imposes strict liability, and those prosecuted must be aware of physically possessing one of the listed weapons for the People to establish guilt, without proof of criminal intent or knowledge of the weapon's legal status (see People v Parilla, 27 NY3d 400, 404 [2016]). The billy is not defined in the statute, leaving it to the courts to determine its ordinary meaning (Taniguchi v Kan Pac. Saipan, Ltd., 132 S Ct 1997, 2002 [2012]). Given the per se nature of the crime and that a defendant's intent is immaterial, as a matter of fundamental fairness it is incumbent upon us to read Penal Law § 265.01 (1) narrowly, limiting application to objects which bear the essential characteristics of those weapons specifically identified by the Legislature. A criminal statute must provide people a reasonable opportunity to understand what conduct it prohibits (see Hill v Colorado, 530 US 703 [2000]). "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language" (Bouie v City of Columbia, 378 US 347, 352 [1964]). Furthermore, "due process bars courts from applying a novel construction of a criminal statute to conduct

that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope" (United States v Lanier, 520 US 259, 266 [1997]). Thus, to place a defendant on notice of the potential exposure to criminal sanction, it must be clear that the object described in the accusatory instrument is the same as the statutorily proscribed weapon (People v Cruz, 48 NY2d 419, 423-24 [1979]).

In People v Persce (204 NY 397 [1912]), this Court upheld the Legislature's authority to impose per se liability for possession of certain specified items, including the billy, stating that their "well-understood character" justified the Legislature "in regarding them as dangerous and foul weapons seldom used for justifiable purposes but ordinarily the effective and illegitimate implements of thugs and brutes in carrying out their unlawful purposes" (id. at 402). The Court assumed the legislative understanding of these weapons' character was informed by the common knowledge of their appearance and instrumentality (id.). Here, the parties concur that a billy was recognized at the time of its inclusion in the predecessor statute to Penal Law § 265.01 in 1866 [L 1866, ch 716 § 1] as a solid wooden club, of fixed dimension and proportions, and that this was the term's meaning for well over a century.

Yet the accusatory instrument described the object possessed by defendant as a "rubber-gripped, metal, extendable baton (billy club)," which the police officer-deponent asserted

"is designed primarily as a weapon, consisting of a tubular metal body with a rubber grip and extendable feature and used to inflict serious injury upon a person by striking or choking." This description includes none of the essential distinguishing physical characteristics of a "billy" as defined at the time the statute was passed. Moreover, the allegation that the metal baton may be used to strike, choke or inflict serious injury -- a fact commonly shared with a multitude of objects not listed in Penal Law § 265.01 (1) -- is an allegation regarding a possible function of an object and not its inherent physical characteristics, and thus is not a factual allegation identifying the object as a billy.

Nevertheless, the majority adopts a wholesale re-envisioning of a billy as a rubber-gripped, metal, expandable baton with a telescoping tube and locking mechanism, on the basis that some dictionary definitions equate a baton with a billy. To the extent the majority relies on modern dictionary definitions for guidance, it does so selectively, for, as the majority recognizes (see maj at 4), there are recent dictionary editions that refer to the historic description of the billy as a wooden club, further establishing these aspects of its "well-understood character" (Persce at 402).[1] A historical illustration of these

---

[1] The American Heritage Dictionary defines "billy" as "a billy club," which is defined as a "short wooden club, especially a police officer's club" (The American Heritage Dictionary [3d ed 1993]). Webster's Third New International Dictionary defines a

recognized characteristics is the definition contained in a contemporary dictionary from when the billy was first prohibited, which described it as "a watchman's club," with "club" defined as a "heavy staff or piece of wood, usually tapering in form, and wielded with the hand" (An American Dictionary of the English Language [1864]).  There is no reason to discard this longstanding definition of a wooden club, which retains its prominence today, in order to impose broad liability under Penal Law § 265.01 (1).

Furthermore, the language in Penal Law § 265.20 (b) does not support the notion that a billy includes a metal extendable police baton.  The Legislature amended Penal Law § 265.20 (b) in 1979 in order to exempt certain auxiliary police officers from liability under Penal Law § 265.01 for "possession of that type of billy commonly known as a 'police baton' which is twenty-four to twenty-six inches in length and no more than one and one quarter inches in thickness" (Penal Law § 265.20 [b]). The specificity of this description clearly indicates that the Legislature was referring to the traditional wooden billy, of fixed dimension and carried by police officers since the middle of the 19th Century.  While the Legislature specifically defined a particular type of police baton to be a type of billy, it does

---

"billy" as "a heavy, usually wooden weapon for delivering blows, especially a policeman's club" (Webster's Third New International Dictionary [1971]).

not follow that any baton used by the police, without regard to its physical characteristics, is a billy.  This is a simple but crucial distinction.

Despite the specificity of Penal Law § 265.01 (1) and the long understood common definition of the billy as a wooden club of fixed length, the majority concludes that a rubber-gripped, metal, extendable baton of indeterminate length and thickness with a locking mechanism is now the proscribed "billy."[2]  However, the majority's "common thread" between the two -- "that a 'billy' is a club or baton with a handle grip which, from its appearance and inherent characteristics, is designed to be used as a striking weapon and not for other lawful purposes" (maj at 7) -- is simply another means of defining the object beyond the common understanding of the definition both at

---

[2] The majority argues that because the Legislature has in the past banned weapons made of a specific material, but not the billy, it must have intended that the billy be defined broadly (maj at 7-8).  Quite the opposite.  The fact that the Legislature found it necessary to update Penal Law § 265.01 (1) to add plastic knuckles confirms that the statute is not to be read broadly and instead applies only to those specifically described weapons listed.  Similarly, the Legislature has had ample opportunity to amend the statute to include a police baton made of materials unimagined in the 1800s, but has not done so. For example, in 2007, the State Senate did in fact pass an amendment to add "collapsible batons" to the statute, but the amendment did not pass the Assembly (see 2007 Bill Text NY SB 7415). Contrary to the majority's assertion (maj op at 6 n 2), the 2015 proposed amendment to Penal Law § 265.20 (b) reaffirms that the billy considered synonymous with a police baton has a distinctive character: 24 to 26 inches in length and no more than one and one-quarter inches thick.

the time the statute was enacted and at present.  Moreover, the differences between billies and the class of baton described in the accusatory instrument give them distinct advantages and disadvantages.  For example, while a billy has a set length and can be cumbersome to carry, an extendable baton is lighter and fits more easily on a police officer's belt.  Even the majority recognizes that these differences between a billy and an extendable baton can render the latter more dangerous as it is easily concealable (maj op 9).  The differences are, of course, important as the statute enumerates many similar striking weapons with handle grips, meaning that accepting the majority's definition makes the inclusion of blackjack, bludgeon, and sandclub alongside billy redundant, thus violating the rule against superfluities (see Hibbs v Winn, 542 US 88, 101 [2004]).  Indeed, as defendant notes, as recently as 2013 the People argued that a nearly identical object was a "bludgeon" (see People v Lopresti, Crim Ct, Bronx County, Nov 21, 2013, Docket No. 2012BX053605, slip op at 1, 9).[3]

While the statute is not ambiguous, a broad interpretation of the term "billy" injects uncertainty into our penal law and deprives defendants of notice and fair warning as to what weapons, created through technological advances in design

---

[3] The majority states that these "instruments have defining characteristics that distinguish them from billies" (maj op 7 n 3).  We concur, but maintain that our colleagues definition of "billy" would make these distinctions superfluous.

and construction, are now within the scope of Penal Law § 265.01. Confusion will certainly lead to claims of statutory ambiguity and for the application of the rule of lenity, which provides "if two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted" (People v Green, 68 NY2d 151, 153 [1986]).  We can avoid this outcome by adhering to the well-established understanding of the billy and recognizing that it does not include the object described in the accusatory instrument.

It bears noting that the majority's assertion that a possessor could escape criminal liability for a slightly modified, more dangerous weapon is beside the point because the object either is or is not a billy.  Moreover, this appeal does not involve a minor cosmetic change to a billy; here we are presented with an object dramatically different in its physical characteristics.  Regardless, whether a metal extendable baton should be added to Penal Law § 265.01 (1) because it is more dangerous than a solid wooden billy club is a policy matter beyond the scope of our judicial authority (United Steelworkers of Am., AFL-CIO-CLC v Weber, 443 US 193, 221 [1979] [it is an oft-stated principle that the judiciary's "duty is to construe rather than rewrite legislation"]; Morissette v United States, 342 US 246, 263 [1952] [the judiciary "should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used

in the statute"]).[4]  If this recent tool of law enforcement is to be treated as a per se weapon, imposing criminal liability without proof of intent, that decision must be made by the legislature.  As is obvious from the statute's exclusion of other dangerous weapons, the legislature chooses which weapons are per se illegal under Penal Law § 265.01 (1), and which weapons require the People to establish a defendant's possession was with the intent to use unlawfully, as provided under Penal Law § 265.01 (2).

For these reasons, I would affirm the order below dismissing the accusatory instrument as facially insufficient.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order reversed and defendant's motion to dismiss the accusatory instrument denied.  Opinion by Judge Stein.  Judges Abdus-Salaam, Fahey and Garcia concur.  Judge Rivera dissents and votes to affirm in an opinion in which Chief Judge DiFiore and Judge Pigott concur.

Decided November 1, 2016

---

[4] For example, when the Legislature decided to add plastic knuckles to Penal Law § 265.01, they did so because they could be taken through metal detectors.