OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether subdivision 1 of section 1192 of the Vehicle and Traffic Law, which prohibits driving while the ability to operate a motor vehicle "is impaired by the consumption of alcohol”, and subdivision 3, which prohibits driving "while * * * in an intoxicated condition”, are unconstitutionally vague in a case where the driver has refused to submit to any scientific test for determining the amount of alcohol he has consumed. The trial court held that, in the absence of a scientific test, the statutory concepts of impairment and intoxication were so vague and indefinite as *423 to violate the defendant’s right to due process. The Appellate Term affirmed with one dissent. The People have appealed.
On the evening of January 28, 1978 a police officer observed the defendant driving in an erratic manner on Third Avenue in Bronx County. The officer stopped the defendant after he had driven through a steady red light. As the defendant left his car the officer detected a strong odor of alcohol on his breath. When he asked the defendant to produce his license and registration the defendant threw them at him. The officer then asked the defendant if he had been drinking and the defendant said that he had a couple of drinks. At this point the officer informed the defendant that he was placing him under arrest for "intoxicated driving”. He subsequently asked the defendant if he would take a breathalyzer test but the defendant refused.
The defendant was charged with a misdemeanor for operating a motor vehicle while under the influence of alcohol in violation of section 1192 of the Vehicle and Traffic Law, based solely on the officer’s observations at the time of arrest. In the accusatory instrument the officer noted that he had first observed the defendant driving in an erratic manner and that the "defendant’s eyes were watery and bloodshot, his speech was slurred and the defendant was unsteady on his feet, and his breath bore the odor of alcohol.” At a preliminary hearing the officer also testified that he had shined his flashlight into the defendant’s eyes and observed that "the pupils did not dilate”. It also appears that the defendant was given a coordination test at the police station by another officer who was not called at the hearing.
The defendant made a pretrial motion to dismiss on the grounds that (a) the accusatory instrument was insufficient in that it failed to inform him whether he was being charged with driving while intoxicated or driving while impaired and (b) that subdivisions 1 and 3 of section 1192 of the Vehicle and Traffic Law were unconstitutionally vague.
As noted, the courts below agreed with the defendant’s second contention. They held that the statutory terms, impaired and intoxicated, were too vague and indefinite to satisfy due process requirements when applied to cases where no chemical test results were available. Thus the accusatory instrument was dismissed prior to trial.
It is a fundamental requirement of due process that a criminal statute must be stated in terms which are reasonably *424 definite so that a person of ordinary intelligence will know what the law prohibits or commands (Connally v General Constr. Co., 269 US 385, 391; United States v Petrillo, 332 US 1, 6; People v Smith, 44 NY2d 613; see, generally, Note, The Void-for-Vagueness Doctrine, 109 U of Penn L Rev 67). The concept promotes fairness to the defendant in two respects. First it insures that the defendant will receive adequate warning of what the law requires so that he may act lawfully. "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed” (United States v Harriss, 347 US 612, 617). Secondly, it serves to prevent arbitrary and discriminatory enforcement by requiring "boundaries sufficiently distinct” for police, Judges and juries to fairly administer the law (United States v Petrillo, supra, p 7; Papachristou v City of Jacksonville, 405 US 156; Grayned v City of Rockford, 408 US 104, 108-109).
But the Constitution only requires reasonable precision; it does not impose "impossible standards” (United States v Petrillo, supra, pp 7-8). Thus "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubt might rise” (United States v Harriss, supra, p 618; United States v Petrillo, supra, p 7; United States v Wurzbach, 280 US 396, 399).
In this State the first statute to prohibit driving while "in an intoxicated condition” was adopted in 1910 (L 1910, ch 374, § 290, subd 3; see, also, King and Tipperman, The Offense of Driving While Intoxicated: the Development of Statutory and Case Law in New York, 3 Hofstra L Rev 541, 544). Convictions under that statute could be based solely on the defendant’s conduct and demeanor at the time of arrest. It was not until 1941 that the results of scientific tests for alcohol content were made admissible by statute (L 1941, ch 726, § 1). In 1960 a new offense, driving "while ability is impaired by the consumption of alcohol”, was adopted as a lesser offense than intoxication (L 1960, ch 184, § 1).
Originally, impairment could only be established by scientific proof showing a specific blood alcohol content (see, e.g., People v Bronzino, 25 AD2d 685). This requirement was eliminated, however, in 1970 (L 1970, ch 275; see, also, Governor’s Memorandum, NY Legis Ann, 1970, p 364). Now, whether the defendant is charged with driving while intoxi *425 cated or driving while impaired by alcohol, scientific evidence of blood alcohol content, although admissible (Vehicle and Traffic Law, § 1195, subd 1), is not essential. Since the defendant’s consent is required for any blood alcohol analysis (Vehicle and Traffic Law, § 1194, subd 2), the present statutory scheme serves to prevent the defendant from defeating a criminal prosecution for either offense by simply refusing to take the test.
The relevant portion of the current statute (Vehicle and Traffic Law, § 1192), applicable also at the time of the arrest in this case, reads as follows:
"1 No person shall operate a motor vehicle while his ability to operate such motor vehicle is impaired by the consumption of alcohol
* * *
"3 No person shall operate a motor vehicle while he is in an intoxicated condition.”
Driving while the ability to operate a motor vehicle is impaired by the consumption of alcohol is a traffic infraction (Vehicle and Traffic Law, § 155). Driving while intoxicated is a misdemeanor or, in the case of a second conviction within 10 years, a felony (Vehicle and Traffic Law, § 1192, subd 5). Evidence that a defendant had less than .10 of 1% of alcohol in his blood is prima facie evidence that he was not intoxicated (Vehicle and Traffic Law, § 1195, subd 2, pars [a], [b], [c]); if there is a higher percentage of alcohol, a defendant would be guilty of a misdemeanor (Vehicle and Traffic Law, § 1192, subds 2, 5).
Concerning impairment, the statute provides that a reading of more than .07 but less than .10 of 1% of alcohol in the blood is prima facie evidence that a defendant’s ability to operate a vehicle was impaired (Vehicle and Traffic Law, § 1195, subd 2, par [c]). A reading of .05 or less is prima facie evidence that a defendant was not impaired or, of course, intoxicated (Vehicle and Traffic Law, § 1195, subd 2, par [a]).
The lower courts felt that this case disclosed a gap in the legislative scheme. They held that the Legislature had neglected to define impairment or intoxication, except in relationship to the alcoholic content of the blood. Thus they concluded that in cases where no test results are available there are no definite standards to guide the defendant, the police, or the courts in determining whether driving after *426 consuming some alcohol would violate the statute and, if so, to what degree.
With respect to impairment the defendant urges that it is not clear whether the statute prohibits driving when the driver is extremely impaired, only moderately impaired, or even impaired to a slight degree and whether an objective or a subjective standard applies. On its face, however, the statute does not speak of degrees of impairment; it simply prohibits the driving of a motor vehicle when the driver’s "ability to operate such vehicle is impaired” (Vehicle and Traffic Law, § 1192, subd 1). Thus driving a motor vehicle while there is any alcoholic impairment of the driver’s "ability to operate such vehicle” would constitute a violation.
That is not to say, of course, that every person who drinks before driving violates the law. On the contrary the Legislature recognized that the average person can consume a certain amount of alcohol without impairing his ability to operate a motor vehicle as he should. Otherwise the Legislature would not have provided that proof of .05 of 1% or less of blood alcohol content is prima facie evidence that the driver was not impaired or intoxicated (Vehicle and Traffic Law, § 1195, subd 2, par [a]). Of course some persons may find their driving faculties impaired by the least consumption of alcohol and, therefore, would be guilty of driving while impaired while others would not (Vehicle and Traffic Law, § 1195, subd 2, par [a]). And the Legislature also recognized that some individuals may be able to consume greater amounts of alcohol without being impaired, as would the average driver (Vehicle and Traffic Law, § 1195, subd 1, par [c]). Thus the impairment statute, by simply providing prima facie standards, takes into account the "subjective” tolerance of individuals in determining the ability to drive possessed by a defendant at the time of arrest. But in determining whether that ability is less than he should possess, the statute necessarily contemplates the use of the objective standard expected of the average driver. Obviously one cannot defend on the ground that, even when he has consumed no alcohol, he generally drives with less prudence and care than is expected of the average driver.
In sum the prohibition against driving while the ability to do so is impaired by alcohol (Vehicle and Traffic Law, § 1192, subd 1) is not a vague and indefinite concept as the defendant contends. It is evident from the statutory language *427 and scheme that the question in each case is whether, by voluntarily consuming alcohol, this particular defendant has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver.
Driving while intoxicated is a more serious offense (Vehicle and Traffic Law, § 1192, subd 5) and thus involves a greater degree of impairment. The courts below held, however, that the line between the two is vague and indefinite because the Legislature failed to provide any verbal definition or standard of comparison. This, it is said, leaves a defendant without any warning as to when he might cross the threshold from mere impairment to intoxication and thus run the risk of a conviction for a more serious offense. In addition, he claims that the absence of guidelines gives law enforcement officers and the courts an impermissible discretion to prosecute and convict for the higher offense.*
Although the Legislature did not include a definition of intoxication in the statute, it does not follow that the term is without a definite or ascertainable meaning. Intoxication is not an unfamiliar concept. It is intelligible to the average person (Richardson, Evidence, § 364, pp 332-333). It is familiar to the law and has long been held to mean an incapacity to perform various mental or physical acts which an average person would be able to do. Of course intoxication is a variable term in the sense that a person, despite the consumption of alcohol, may be able to do certain things (for instance, physically operate a motor vehicle), while his ability to do something more demanding (such as operate a motor vehicle safely) may be destroyed. But the standard for determining intoxication is constant; that is, whether the individual’s consumption of alcohol has rendered him incapable of employing the physical or mental abilities needed to, for instance, form a specific intent (People v Koerber, 244 NY 147, 152; see, also, Perkins, Criminal Law, pp 793-794), understand the nature and effect *428 of a contract (Simpson, Contracts, § 79, p 293) or testify truthfully and accurately (Hartford v Palmer, 16 Johns 143).
 A statute which employs terms having an accepted meaning "long recognized in law and life” cannot be said to be so vague and indefinite as to afford the defendant insufficient notice of what is prohibited or inadequate guidelines for adjudication (International Harvester Co. v Kentucky, 234 US 216; Nash v United States, 229 US 373, 377; People v Grogan, 260 NY 138; People v Mancuso, 255 NY 463, 470), even though there may be "an element of degree in the definition as to which estimates might differ” (Connally v General Constr. Co., 269 US 385, 391, supra). And words and phrases used in a statute should be given their ordinary meaning when, as here, the Legislature has given no indication that a different meaning was intended (see, e.g., McKinney’s Cons Laws of NY, Statutes, Book 1, § 232). This is particularly apt when it is claimed that the statute might otherwise lack sufficiently definite standards or guidelines to satisfy the requirements of due process (see, e.g., Screws v United States, 325 US 91).
In sum, intoxication is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver.
As noted, the concept of intoxication does not require expert opinion. A layman, including the defendant and those charged with administering the law, should be able to determine whether the defendant’s consumption of alcohol has rendered him incapable of operating a motor vehicle as he should. Thus, even when no chemical test has been made of the driver’s blood alcohol content, the statute provides reasonable warning of what is prohibited and sufficient standards for adjudication.
We therefore conclude that subdivisions 1 and 3 of section 1192 of the Vehicle and Traffic Law are not unconstitutionally vague or indefinite when applied to a case where an analysis of the driver’s blood alcohol content is unavailable.
Accordingly, the order of the Appellate Term should be reversed, the accusatory instrument reinstated and the case remitted to the Criminal Court for further proceedings.
*429 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order reversed, etc.

 We note that even if the offenses did overlap it is doubtful that the resulting prosecutorial discretion would offend due process (People v Eboli, 34 NY2d 281). And although constitutional notions of fairness require the notice to the defendant of what is prohibited so that he may act lawfully, the standard is less demanding where questions of degree are involved (see, e.g., Nash v United States, 229 US 373, 377; United States v Wurzbach, 280 US 396, 399, supra). And it may be that fairness would permit even less precise notice when the defendant is not called upon to choose between a lawful act and an unlawful one, but between two unlawful acts of different degrees.