THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM OTTOMANELLI, Appellant.

Second Department, March 11, 1985

### APPEARANCES OF COUNSEL

*Russo & Garguilo, P. C.* (*Kevin M. Fox* of counsel), for appellant.

*Patrick Henry, District Attorney* (*Michael J. Miller* of counsel), for respondent.

### OPINION OF THE COURT

RUBIN, J.

The instant appeal presents a question concerning the proper legal standard for determining if the accused was driving while intoxicated within the meaning of Vehicle and Traffic Law § 1192 (3).

On February 10, 1983, at approximately 1:55 A.M., Suffolk County Police Officers Gary Miller and Daniel Rudek were driving in a marked patrol car eastbound on Route 25 in Centereach, New York. Officer Miller saw a 1974 Lincoln automobile leave a Jack-in-the-Box restaurant on the south side of Route 25, go across that four-lane roadway and then hit the curb on the north side of Route 25 before proceeding westbound on that road. The officers made a U-turn and followed the Lincoln, during

which time they observed it repeatedly swerve, in an erratic manner, from the right westbound lane into the left westbound lane and then back into the right westbound lane. Officer Rudek also observed the Lincoln cross the double yellow line, which demarcates the eastbound from the westbound lanes, by about the width of a car tire. Although Officer Miller did not see the Lincoln cross the double yellow line, he did see it nearly hit the curb a second time after it swerved from the left westbound lane of Route 25 back to the right westbound lane. Officer Miller activated the overhead lights of the patrol car and the Lincoln pulled over to the curb in front of the Middle Island Tavern. Both officers identified defendant as the driver of the Lincoln.

After stopping the car, Officer Miller approached the window on the driver's side and asked defendant for his driver's license and registration. Officer Miller also inquired as to whether defendant was having a problem. Defendant replied that he had a few drinks and had gone to buy a hamburger and french fries. Officer Miller observed defendant fumble through his wallet for the requested documents and detected an odor of alcohol on his breath. The officer also noted that defendant's eyes were bloodshot and that his speech was slurred. Officer Rudek made the same observations regarding defendant's physical condition and testified that defendant nearly fell down several times as he walked to the rear of the car.

Officer Miller then asked defendant to perform several field sobriety tests. Defendant was first asked to stand, tilt his head back, spread his arms to the side and, then, alternating hands, to touch the tip of his nose with his finger. Both officers observed that defendant was unable to touch the tip of his nose without first touching the side of his face or the bridge of his nose. Defendant was then asked to walk a straight line by placing the heel of one foot to the toe of the other foot. According to the officers, defendant experienced great difficulty with his balance during this test; defendant was unsteady on his feet and was unable to place his heel to the toe of his other foot.

Lastly, defendant was asked to pick up three or four quarters from the hood of the patrol car. Officer Miller observed that defendant was having trouble using his fingers during this test and that it took him a few minutes to pick the coins up. According to Officer Rudek, defendant steadied himself during the "quarter test" by placing his free hand on the hood of the patrol car.

At approximately 2:04 A.M., as a result of his poor performance on the field sobriety tests, Officer Miller placed defendant

under arrest for driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3). Defendant received *Miranda* warnings (384 US 436) when he arrived at the police precinct and agreed to talk to the police without an attorney present. Officer Miller then requested defendant to submit to a breathalyzer test, warning him that the refusal to take the test could result in a suspension and eventual revocation of his license. Defendant refused to take the breathalyzer test, as he had earlier when he was riding in the patrol car to the precinct. Officer Rudek administered to defendant the questions on the Alcohol Influence Report Form. In response to the question as to whether he had been drinking alcoholic beverages prior to his arrest, defendant stated that he had consumed approximately four beers at McCarthy's Bar between "11:30" and "2:00". After the Alcohol Influence Report was completed, Officer Miller contacted the central records office and learned that defendant had been convicted previously of driving while intoxicated in April 1981.

At approximately 3:45 A.M., as the police officers were preparing to lodge him in a cell for the rest of the night, defendant asked Officer Miller if he could be released on bail after he took the breathalyzer test. Officer Miller responded to defendant that the breathalyzer test would have no effect on his release, as he was required to be incarcerated overnight due to his prior conviction for driving while intoxicated. The officer testified that, at no time after his arrest, did defendant actually request to take the breathalyzer test. In any event, it would not have been possible to comply with defendant's belated request because the breathalyzer test must be administered within two hours after defendant's arrest (Vehicle and Traffic Law § 1194 [1] [1]).

Defendant took the stand in his own defense and testified that he went to Jack McCarthy's pub to cash a check on the evening of February 9, 1983. He stayed at the pub until approximately 10:30 P.M. and had two or three beers while waiting for the owner to collect enough money to cash the check. He then returned home and his girlfriend asked him to buy her a hamburger and french fries. Defendant went to the Jack-in-the-Box restaurant between 11:30 P.M. and midnight and then drove onto Route 25. In contradiction to the arresting officers' description of the road conditions, defendant claimed that Route 25 was icy, snowy and slippery. Defendant testified that his car hit boards from a construction site covered with ice and snow on the roadway, causing it to swerve. Other than this problem caused by the road conditions, defendant claimed that his car never weaved nor crossed the double yellow line. Defendant recalled

that he was stopped by the police at the Middle Island Tavern and Officer Miller asked him for his license and registration and noted that his license indicated that he had previously been convicted for driving while intoxicated. Officer Miller, however, denied that he noticed the conviction stub on defendant's license when he stopped him in his car. Defendant acknowledged that he told the police that he had imbibed a "couple of beers" earlier that night. He maintained, however, that he performed the field sobriety tests flawlessly, despite the ice and snow in the parking lot of the Middle Island Tavern. Defendant testified that he told the police, in response to the questions on the Alcohol Influence Report, that he had two or three beers on the night of his arrest. Although he had initially refused to take the breathalyzer test when he was asked to do so by the police at the precinct, defendant stated that he requested to take the test later and that the police refused to allow him to do so.

John McCarthy, the owner of McCarthy's Pub, testified that on February 9, 1983, between approximately 8:30 P.M. and 10:30 P.M., defendant was in his bar to cash a check and had two to four eight-ounce glasses of beer. Mr. McCarthy stated, however, that defendant was not drunk when he left the bar.

After the conclusion of the testimony, the Trial Judge delivered his verdict from the Bench, finding that the evidence established defendant's guilt beyond a reasonable doubt of driving while intoxicated, in violation of Vehicle and Traffic Law § 1192 (3).

In arriving at this verdict, the Trial Judge applied a definition of intoxication which was adopted, almost verbatim, from the sample instructions contained in the Criminal Jury Instructions for determining if the accused operated a motor vehicle while in an intoxicated condition in violation of Vehicle and Traffic Law § 1192 (3). A violation of subdivision (3) of this section is a misdemeanor or, in the case of a second conviction within 10 years, a felony (see, Vehicle and Traffic Law § 1192 [5]). The definition of intoxication published in the Criminal Jury Instructions reads, in pertinent part, as follows: "I charge you that a person is intoxicated who has voluntarily, that is, knowingly and of his own volition, consumed alcohol to such an extent as to diminish or reduce his judgment and ability to operate a motor vehicle. A person is intoxicated for these purposes when he has consumed sufficient alcohol to restrict his ability to think and to act clearly and when he has lost, *even in part,* the control of his mental and physical faculties necessary to give that attention and care to the operation of his automobile that a person of

prudence and of reasonable intelligence would give to it" (3 CJI [NY], V&TL 1192 [3], at 2283; emphasis supplied).

Defendant contends that this definition, which the Trial Judge used to convict him of driving while intoxicated, is incompatible with the definition of intoxication formulated by the Court of Appeals in *People v Cruz* (48 NY2d 419, *appeal dismissed* 446 US 901), because the *Cruz* definition, established shortly after the Criminal Jury Instructions were published in 1979, sets forth a more stringent standard for evaluating whether the accused was driving while intoxicated within the meaning of the statutory prohibition. We agree.

In *People v Cruz (supra)*, the Court of Appeals defined the terms impaired and intoxicated in a decision upholding the constitutionality of Vehicle and Traffic Law § 1192 (1), (3) against a challenge predicated upon the void for vagueness doctrine. In construing subdivision (1) of section 1192 of this statute, which prohibits the operation of a motor vehicle while the ability to do so is impaired by the consumption of alcohol, the Court of Appeals defined "impairment" to mean that the defendant, by voluntarily consuming alcohol, "has actually impaired, *to any extent,* the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (*People v Cruz, supra,* p 427; emphasis supplied). Driving while the ability to operate a motor vehicle is impaired by the consumption of alcohol is a traffic infraction (Vehicle and Traffic Law § 155). In construing Vehicle and Traffic Law § 1192 (3) (the statutory prohibition against operating a motor vehicle while in an intoxicated condition), the Court of Appeals defined "intoxication" as "a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is *incapable* of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (*People v Cruz, supra,* p 428; emphasis supplied).

Before a defendant may be convicted of driving while intoxicated, under the *Cruz* definition of intoxication, the accused's voluntary consumption of alcohol must have rendered him *incapable* of performing the physical or mental acts required to operate a motor vehicle as a reasonable and prudent driver. This total incapacity test is more stringent than the partial incapacity standard formulated in the Criminal Jury Instructions' definition of intoxication, which permits a conviction for driving while intoxicated based on a finding that the accused has *lost, even in part,* the control of his mental and physical faculties

necessary to operate a vehicle as a reasonable and prudent man. The Criminal Jury Instructions' definition of intoxication is more akin to the *Cruz* definition of impairment and, therefore, it is an erroneous standard upon which to base a conviction for driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3). We wish to emphasize to the members of the Bench and Bar that the correct definitions of intoxication and also impairment have been established by the Court of Appeals in *People v Cruz* (*supra*), rather than the sample definition contained in the Criminal Jury Instructions, which was published shortly prior to the *Cruz* decision and is now, apparently, outdated.

Nevertheless, defendant's conviction of driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3) should still be affirmed despite the errors in the legal standard employed by the Judge presiding at this nonjury trial. In cases involving Bench trials, such as that at bar, or pretrial hearings, this court has repeatedly held that the Appellate Division may make its own findings of fact if the record is sufficiently complete and the Judge presiding at the trial or hearing either failed to make the required findings of fact or incorrectly assessed the evidence (*see,* CPL 470.15 [1]; *People v Le Grand,* 96 AD2d 891, 892; *People v Lopez,* 95 AD2d 241, 253; *People v James,* 93 AD2d 893, 894; *People v Acosta,* 74 AD2d 640; *People v Cruz,* 65 AD2d 558; *People v Russo,* 45 AD2d 1040; *cf. People v Crudup,* 100 AD2d 938). Therefore, we conclude that when the evidence adduced at the trial is viewed in the light most favorable to the People (*see, People v Kennedy,* 47 NY2d 196, 203; *People v Benzinger,* 36 NY2d 29, 32), it is sufficient to establish that defendant was operating his automobile while in an "intoxicated condition", within the meaning of Vehicle and Traffic Law § 1192 (3), as that term is defined by the Court of Appeals in *People v Cruz* (*supra,* pp 427-428). The two arresting officers, whose testimony was credited by the Trial Judge, stopped defendant's automobile after observing that it was being driven in an erratic manner, swerving from lane to lane and colliding into the curb at one point (*see, People v Kurtz,* 92 AD2d 962). When the officers stopped defendant, they noticed certain signs of intoxication. His breath had an odor of alcohol, his eyes were bloodshot and his speech, at times, was slurred (*see, People v Van Dusen,* 89 AD2d 649; *Matter of Blizinski v Melton,* 86 AD2d 701). The poor coordination exhibited by defendant during the performance tests administered by the officers confirmed their conclusion that he was intoxicated. In addition, the defendant himself admitted to the police that he had consumed several beers on the night of his arrest (*see, People v Van Dusen, supra*).

Accordingly, for the foregoing reasons, we conclude that the judgment under review, convicting defendant of driving while intoxicated as a class E felony pursuant to Vehicle and Traffic Law § 1192 (3), should be affirmed.

TITONE, J. P., MANGANO and BROWN, JJ., concur.

Judgment of the County Court, Suffolk County, rendered January 5, 1984, affirmed.