Rivera, J.
(dissenting). The People equate a modern-day, rubber-gripped, metal extendable baton with a centuries-old solid wooden club of fixed length known as a “billy” for purposes of criminal liability under Penal Law § 265.01 (1). While both billies and extendable batons have been used as police batons at different points in history, they are distinct objects. As unpersuasive as the People’s argument that, in the absence of a legislative definition, we may transmute the term “billy,” whose definition has remained stable since the 1850s, into “police baton,” is the majority’s conclusion that the legislature intended the billy to include batons, regardless of functional design and construction. The legislature has not amended the statute to permit this expansive definition, despite opportunity to do so, and faced with a statute which creates a category of weapons that are per se illegal to possess, we must narrowly construe its terms. Therefore, I dissent and would affirm the dismissal of the accusatory instrument.
Penal Law § 265.01 (1) provides:
“A person is guilty of criminal possession of a weapon in the fourth degree when: (1) [such person] possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or ‘Rung Fu star.’ ”
The statute imposes strict liability, and those prosecuted must be aware of physically possessing one of the listed weapons for *186 the People to establish guilt, without proof of criminal intent or knowledge of the weapon’s legal status (see People v Parrilla, 27 NY3d 400, 404 [2016]). The billy is not defined in the statute, leaving it to the courts to determine its ordinary meaning (Taniguchi v Kan Pacific Saipan, Ltd., 566 US —, —, 132 S Ct 1997, 2002 [2012]). Given the per se nature of the crime and that a defendant’s intent is immaterial, as a matter of fundamental fairness it is incumbent upon us to read Penal Law § 265.01 (1) narrowly, limiting application to objects which bear the essential characteristics of those weapons specifically identified by the legislature. A criminal statute must provide people a reasonable opportunity to understand what conduct it prohibits (see Hill v Colorado, 530 US 703 [2000]). “There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language” (Bouie v City of Columbia, 378 US 347, 352 [1964]). Furthermore, “due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope” (United States v Lanier, 520 US 259, 266 [1997]). Thus, to place a defendant on notice of the potential exposure to criminal sanction, it must be clear that the object described in the accusatory instrument is the same as the statutorily proscribed weapon (People v Cruz, 48 NY2d 419, 423-424 [1979]).
In People v Persce (204 NY 397 [1912]), this Court upheld the legislature’s authority to impose per se liability for possession of certain specified items, including the billy, stating that their “well-understood character” justified the legislature “in regarding them as dangerous and foul weapons seldom used for justifiable purposes but ordinarily the effective and illegitimate implements of thugs and brutes in carrying out their unlawful purposes” (id. at 402). The Court assumed the legislative understanding of these weapons’ character was informed by the common knowledge of their appearance and instrumentality (id.). Here, the parties concur that a billy was recognized at the time of its inclusion in the predecessor statute to Penal Law § 265.01 in 1866 (L 1866, ch 716, § 1) as a solid wooden club, of fixed dimension and proportions, and that this was the term’s meaning for well over a century.
Yet the accusatory instrument described the object possessed by defendant as a “rubber-gripped, metal, extendable baton (billy club),” which the police officer-deponent asserted “is *187 designed primarily as a weapon, consisting of a tubular, metal body with a rubber grip and extendable feature and used to inflict serious injury upon a person by striking or choking.” This description includes none of the essential distinguishing physical characteristics of a “billy” as defined at the time the statute was passed. Moreover, the allegation that the metal baton may be used to strike, choke or inflict serious injury—a fact commonly shared with a multitude of objects not listed in Penal Law § 265.01 (1)—is an allegation regarding a possible function of an object and not its inherent physical characteristics, and thus is not a factual allegation identifying the object as a billy.
Nevertheless, the majority adopts a wholesale re-envisioning of a billy as a rubber-gripped, metal, extendable baton with a telescoping tube and locking mechanism, on the basis that some dictionary definitions equate a baton with a billy. To the extent the majority relies on modern dictionary definitions for guidance, it does so selectively, for, as the majority recognizes (see majority op at 181-182), there are recent dictionary editions that refer to the historic description of the billy as a wooden club, further establishing these aspects of its “well-understood character” (Persce at 402).[1] A historical illustration of these recognized characteristics is the definition contained in a contemporary dictionary from when the billy was first prohibited, which described it as “a watchman’s club,” with “club” defined as a “heavy staff or piece of wood, usually tapering in form, and wielded with the hand” (An American Dictionary of the English Language 242 [1864]). There is no reason to discard this long-standing definition of a wooden club, which retains its prominence today, in order to impose broad liability under Penal Law § 265.01 (1).
Furthermore, the language in Penal Law § 265.20 (b) does not support the notion that a billy includes a metal extendable police baton. The legislature amended Penal Law § 265.20 (b) in 1979 in order to exempt certain auxiliary police officers from liability under Penal Law § 265.01 for “possession of that type of billy commonly known as a ‘police baton’ which is twenty- *188 four to twenty-six inches in length and no more than one and one-quarter inches in thickness” (Penal Law § 265.20 [b]). The precision of this description clearly indicates that the legislature was referring to the traditional wooden billy, of fixed dimension and carried by police officers since the middle of the nineteenth century. While the legislature specifically defined a particular type of police baton to be a type of billy, it does not follow that any baton used by the police, without regard to its physical characteristics, is a billy. This is a simple but crucial distinction.
Despite the specificity of Penal Law § 265.20 (b) and the long understood common definition of the billy as a wooden club of fixed length, the majority concludes that a rubber-gripped, metal, extendable baton of indeterminate length and thickness with a locking mechanism is now the proscribed “billy.”[2] However, the majority’s “common thread” between the two— “that a ‘billy’ is a . . . club or baton with a handle grip which, from its appearance and inherent characteristics, is designed to be used as a striking weapon and not for other lawful purposes” (majority op at 183)—is simply another means of defining the object beyond the common understanding of the definition both at the time the statute was enacted and at present. Moreover, the differences between billies and the class of baton described in the accusatory instrument give them distinct advantages and disadvantages. For example, while a billy has a set length and can be cumbersome to carry, an extendable baton is lighter and fits more easily on a police officer’s belt. Even the majority recognizes that these differences between a billy and an extendable baton can render the latter more dangerous as it is easily concealable (majority op at 184). *189 The differences are, of course, important as the statute enumerates many similar striking weapons with handle grips, meaning that accepting the majority’s definition makes the inclusion of blackjack, bludgeon, and sandclub alongside billy redundant, thus violating the rule against superfluities (see Hibbs v Winn, 542 US 88, 101 [2004]). Indeed, as defendant notes, as recently as 2013 the People argued that a nearly identical object was a “bludgeon” (see People v Lopresti, Crim Ct, Bronx County, Nov. 21, 2013, docket No. 2012BX053605, slip op at 1, 9).[3]
While the statute is not ambiguous, a broad interpretation of the term “billy” injects uncertainty into our Penal Law and deprives defendants of notice and fair warning as to what weapons, created through technological advances in design and construction, are now within the scope of Penal Law § 265.01. Confusion will certainly lead to claims of statutory ambiguity and for the application of the rule of lenity, which provides “if two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted” (People v Green, 68 NY2d 151, 153 [1986]). We can avoid this outcome by adhering to the well-established understanding of the billy and recognizing that it does not include the object described in the accusatory instrument.
It bears noting that the majority’s assertion that a possessor could escape criminal liability for a slightly modified, more dangerous weapon is beside the point because the object either is or is not a billy. Moreover, this appeal does not involve a minor cosmetic change to a billy; here we are presented with an object dramatically different in its physical characteristics. Regardless, whether a metal extendable baton should be added to Penal Law § 265.01 (1) because it is more dangerous than a solid wooden billy club is a policy matter beyond the scope of our judicial authority (Steelworkers v Weber, 443 US 193, 221 [1979] [it is an oft-stated principle that the judiciary’s “duty is to construe rather than rewrite legislation”]; Morissette v United States, 342 US 246, 263 [1952] [the judiciary “should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contem *190 plated by the words used in the statute”]).[4] If this recent tool of law enforcement is to be treated as a per se weapon, imposing criminal liability without proof of intent, that decision must be made by the legislature. As is obvious from the statute’s exclusion of other dangerous weapons, the legislature chooses which weapons are per se illegal under Penal Law § 265.01 (1), and which weapons require the People to establish a defendant’s possession was with the intent to use unlawfully, as provided under Penal Law § 265.01 (2).
For these reasons, I would affirm the order below dismissing the accusatory instrument as facially insufficient.
Judges Abdus-Salaam, Fahey and Garcia concur; Judge Rivera dissents and votes to affirm in an opinion in which Chief Judge DiFiore and Judge Pigott concur.
Order reversed and defendant’s motion to dismiss the accusatory instrument denied.

. The American Heritage Dictionary defines “billy” as “[a] billy club,” which is defined as a “short wooden club, especially] a police officer’s [club]” (The American Heritage Dictionary 86 [3d ed 1994]). Webster’s Third New International Dictionary defines a “billy” as “a heavy, usu[ally] wooden weapon for delivering blows . . . especially] ... a policeman’s club” (Webster’s Third New International Dictionary 216 [1971]).

. The majority argues that because the legislature has in the past banned weapons made of a specific material, but not the billy, it must have intended that the billy be defined broadly (majority op at 183-184). Quite the opposite. The fact that the legislature found it necessary to update Penal Law § 265.01 (1) to add plastic knuckles confirms that the statute is not to be read broadly and instead applies only to those specifically described weapons listed. Similarly, the legislature has had ample opportunity to amend the statute to include a police baton made of materials unimagined in the 1800s, but has not done so. For example, in 2007, the State Senate did in fact pass an amendment to add “collapsible batons” to the statute, but the amendment did not pass the Assembly (see 2007 NY Senate Bill S7415). Contrary to the majority’s assertion (majority op at 183 n 2), the 2015 proposed amendment to Penal Law § 265.20 (b) reaffirms that the billy considered synonymous with a police baton has a distinctive character: 24 to 26 inches in length and no more than IV4 inches thick.

. The majority states that these “instruments have defining characteristics that distinguish them from billies” (majority op at 183 n 3). We concur, but maintain that our colleagues definition of “billy” would make these distinctions superfluous.

. For example, when the legislature decided to add plastic knuckles to Penal Law § 265.01, it did so because they could be taken through metal detectors.