People v Morel (2026 NY Slip Op 00822)

People v Morel

2026 NY Slip Op 00822

Decided on February 17, 2026

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 17, 2026

No. 3 

[*1]The People & c., Respondent,
vAgustin Morel, Appellant.

Lawrence T. Hausman, for appellant.
Julianna S. Sousou, for respondent.

RIVERA, J.

The issue on appeal is whether the accusatory instrument, which charged defendant with driving while his ability was impaired by marijuana, is facially sufficient. We conclude that the factual allegations of defendant's recent marijuana use, his physical manifestations of impairment, and his refusal to take a drug test provide reasonable cause to believe he committed the charged offense, and we therefore affirm.***
Defendant Agustin Morel was charged by misdemeanor information with "driving while ability impaired by drugs," in violation of Vehicle and Traffic Law § 1192 (4). Under that statute, "[n]o person shall operate a motor vehicle while [their] ability to operate such a motor vehicle is impaired by the use of a drug as defined in this chapter" (id.). Vehicle and Traffic Law § 114-A, in turn, defines "drug" to include cannabis.
In the accusatory instrument, defendant's arresting officer made the following factual allegations:
"I observed the defendant driving a car . . . (the key was in the ignition, the engine was running, and the defendant was behind the wheel).
"I know defendant was under the influence of drugs because I smelled an odor of marijuana coming from the defendant's clothing. I observed that the defendant had watery and bloodshot eyes, and I observed that the defendant had ash containing [*2]marijuana on his pants. The defendant stated, in substance: I had two puffs of marijuana before you stopped me.
"I know that the ash I recovered contains marijuana based on my professional training as a police officer in the identification of marijuana, my prior experience as a police officer making marijuana arrests, and the odor emanating from the substance.
"I advised the defendant of his rights regarding the taking of a test to determine the presence of drugs in his urine and the defendant refused to take the test."
At defendant's arraignment, the prosecutor submitted to the court and defendant, among other materials, a document entitled "Report of Refusal to Submit to Chemical Test." In that report, the arresting officer alleged that he observed defendant change lanes twice without signaling and that defendant appeared "unsteady on his feet" after stepping out of his vehicle.
Defendant moved to dismiss the accusatory instrument as facially insufficient, arguing that the factual allegations do not establish reasonable cause to believe that he was impaired by marijuana. Criminal Court denied his motion. Defendant subsequently waived prosecution by information and pleaded guilty to driving while ability impaired by alcohol, in violation of Vehicle and Traffic Law § 1192 (1), a traffic infraction not originally charged in the accusatory instrument, to resolve his case.
On appeal, the Appellate Term rejected defendant's facial insufficiency claim and affirmed the judgment of conviction (81 Misc 3d 138[A] [App Term, 1st Dept 2024]). A Judge of this Court granted defendant leave to appeal (41 NY3d 1020 [2024]).
As a threshold matter, like the courts below, we cannot consider the allegations in the Report of Refusal to determine whether the accusatory instrument is facially sufficient. Facial sufficiency depends on the adequacy of the factual allegations contained within the four corners of the accusatory instrument, and a court may only consider additional documents if the accusatory instrument appends, references, or incorporates them (see People v Hardy, 35 NY3d 466, 475 [2020]; People v Slade, 37 NY3d 127, 138 [2021] [holding that a certificate of translation of the English-language misdemeanor complaint was irrelevant to the facial sufficiency analysis because the complaint did not reference or incorporate it]). Here, the accusatory instrument does not append, incorporate, or reference the Report of Refusal. Nor does the Report of Refusal qualify as a "supporting deposition . . . accompanying or filed in connection with" an information or complaint (CPL 100.20). Therefore, we must assess the sufficiency of the accusatory instrument based solely on the arresting officer's factual allegations contained therein.
Turning to the merits, because defendant waived prosecution by information, we assess the accusatory instrument under the less demanding standard for a misdemeanor complaint (see People v Willis, 44 NY3d 14, 20-21 [2025]; People v Dumay, 23 NY3d 518, 522 [2014]). "Under that more lenient standard, '[t]he factual part of a misdemeanor complaint must allege "facts of an evidentiary character" (CPL 100.15 [3]) demonstrating "reasonable cause" to believe the defendant committed the crime charged' " (Willis, 44 NY3d at 21, quoting People v Dumas, 68 NY2d 729, 731 [1986]). "Reasonable cause" exists "when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and [*3]persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it" (CPL 70.10 [2]). A court may "draw[ ] reasonable inferences from all the facts set forth in the accusatory instrument" (People v Jackson, 18 NY3d 738, 747 [2012]). Where the factual allegations "give [a] defendant[ ] 'notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading' " (Willis, 44 NY3d at 21, quoting People v Konieczny, 2 NY3d 569, 575 [2004]).
As we confirmed in People v Dondorfer, the standard that this Court adopted in People v Cruz (48 NY2d 419, 427 [1979]) for impairment by alcohol also applies to provisions of the Vehicle and Traffic Law concerning impairment by drugs (see People v Dondorfer, — NY3d —, — [2026] [decided today]). Thus, the Cruz standard controls our analysis. Under that standard, a person is "impaired" when they have "actually impaired, to any extent, the physical and mental abilities which [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (48 NY2d at 427 [emphasis added]). As defendant concedes, an accusatory instrument need not allege erratic driving to provide reasonable cause to believe that a person drove while intoxicated or impaired (see e.g. People v Chaitram, 85 Misc 3d 141[A], *2-3 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2025] [holding that an accusatory instrument charging a defendant with driving while intoxicated does not have to allege dangerous driving], lv denied 43 NY3d 1054 [2025]; People v Fiumara, 116 AD3d 421, 421 [1st Dept 2014] [same]). Impairment may be discerned by observing the defendant's physical condition, the surrounding circumstances, and all relevant and reasonable inferences to be drawn therefrom (see Chaitram, 85 Misc 3d at *2).[FN1]
Applying these legal principles here, the arresting officer's factual allegations are sufficient to provide reasonable cause to believe that defendant drove while impaired by marijuana. The officer alleged that, based on his professional training as a police officer in the identification of marijuana and his prior experience making marijuana arrests, the ash he observed on defendant's pants contained marijuana. Moreover, defendant told the officer that he had taken two puffs of marijuana before the officer stopped him, and the officer smelled the odor of marijuana emanating from defendant's clothes. These allegations support the inference that defendant consumed marijuana inside the vehicle, shortly before the officer approached him.
The remaining allegations in the accusatory instrument support the conclusion that defendant was impaired by his recent drug use, a necessary element of the charge against him. The arresting officer observed physical manifestations of the effects of marijuana—specifically, that defendant had watery and bloodshot eyes. Additionally, defendant refused a urine test to determine the presence of drugs in his system. Lower courts have consistently held that such refusal, when considered along with the other allegations in the accusatory instrument, is relevant to determining reasonable cause to believe that the defendant drove while intoxicated or impaired (see e.g. Fiumara, 116 AD3d at 421; People v King, 83 Misc 3d 29, 33 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024]). As these lower court opinions suggest, a defendant's refusal to take a chemical test evince consciousness of guilt. Thus, based on the totality of the circumstances, there was reasonable cause to believe that defendant operated a motor vehicle while his ability was impaired by the effects of his marijuana consumption.
To reach the contrary conclusion, the dissent looks at each relevant factor of impairment in isolation instead of considering them in their totality. For example, the dissent asserts that defendant's watery and bloodshot eyes, "without more," do not bear on defendant's impairment because they are "a common byproduct of allergies, among other benign causes" (dissenting op at 8). The dissent ignores that the accusatory instrument alleges more. It is the combined allegations of defendant's watery and bloodshot eyes, along with the remaining facts asserted in the accusatory instrument, that provide reasonable cause. Similarly, while defendant's refusal to take a urine test to confirm the presence of marijuana may be insufficient on its own to create reasonable cause to believe that defendant was driving while impaired (see id. at 8-9), it is but one relevant factor. Viewed in the context of the entire accusatory instrument, defendant's refusal to take the urine test supports an inference that he was aware that he was driving while impaired by marijuana, and he did not want to strengthen the evidence against him. The logical endpoint of the dissent's isolated analysis of each of these factors is that, on their own, they can never be probative of whether a person is impaired. The dissent tellingly cites no case law to support its view, nor any indication that its view is consistent with legislative intent.
The dissent's claim that we "condone the simple error of an officer's failure to transfer facts from [the Report of Refusal] to [the accusatory instrument]" is both incorrect and a distraction from its flawed assessment of the accusatory instrument (dissenting op at 11). Our analysis is grounded in the standards for facial sufficiency that the Court has repeatedly reaffirmed over the course of decades, as well as the legislature's statutory definition of "reasonable cause."[FN2] The dissent ignores those foundational sources by scrutinizing each allegation in isolation and refusing to consider how they come together as a whole. It is apparent that the dissent's observations about each individual allegation goes to the weight that each ought to be afforded, but weight is a matter of proof for trial (see Willis, 44 NY3d at 24 ["The truth of the allegations (in an accusatory instrument) is an issue for trial. It is not a basis for dismissing a complaint for facial insufficiency"]; see also People v Smalls, 26 NY3d 1064, 1067 [2015] [observing that the Court's rejection of the defendant's facial sufficiency argument did not preclude him from raising that same argument as a trial defense]; Slade, 37 NY3d at 143-144 [same]).
The dissent's suggestion that under our analysis, a person may be charged with Vehicle and Traffic Law § 1192 (4) based on the police observing them driving while their eyes are red, that they have a prescription bottle of Xanax in the cupholder, and that they refused to take a blood test for Xanax, is particularly odd (see dissenting op at 10). In any facial sufficiency analysis, a court must consider all of the allegations in an accusatory instrument together. All we conclude on the record before us is that the accusatory instrument charging defendant established reasonable cause to believe that his ability to drive was impaired by marijuana. In any event, the dissent's Xanax hypothetical demonstrates perfectly why each case depends on the totality of the allegations. Xanax has many common side effects that could impair a person's ability to drive, including "[c]lumsiness or unsteadiness," "[d]ifficulty with coordination," "[t]iredness," and "[t]rouble concentrating" (Mayo Clinic, Alprazolam [oral route], available at 
https://www.mayoclinic.org/drugs-supplements/alprazolam-oral-route/description/drg-20061040 [last accessed Jan. 29, 2026]). The dissent's response to this point is further evidence that it misapplies the proper legal standard (see dissenting op at 11 n 3). The question is not whether watery, bloodshot eyes necessarily support reasonable cause to believe that a person is impaired by one drug, but not another. Whether there is reasonable cause to believe that a person's ability to drive has been impaired by marijuana, or any drug listed in Public Health Law § 3306 (c) (1), is necessarily a fact-specific question that turns on the allegations in the particular accusatory instrument. Contrary to the dissent's framing (see id.), the same facial sufficiency analysis applies in any case where a defendant is charged under Vehicle and Traffic Law § 1192 (4), regardless of the drug they are alleged to have used.
Defendant's arguments are similarly unavailing. Defendant's claim that taking "two puffs" of marijuana is insufficient to establish impairment ignores that the standard for impairment under Cruz is whether someone is "actually impaired, to any extent" (48 NY2d at 427), and not some minimum amount of drugs consumed. At this stage, we are concerned with the sufficiency of the instrument under the minimum standard of reasonable cause, which asks whether the entirety of the factual assertions, and the reasonable inferences that follow from them, make it "reasonably likely" that the defendant committed the charged offense (CPL 70.10 [2]; see Willis, 44 NY3d at 21; Jackson, 18 NY3d at 747).
Applying that standard here, we conclude that the arresting officer's observations of defendant's appearance, the surrounding circumstances, the officer's training and experience, defendant's admissions, and defendant's refusal to take a drug test, considered together, provide reasonable cause to believe that defendant drove while impaired. The allegations "are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that" defendant was driving while ability impaired by drugs, as charged in the accusatory instrument (CPL 70.10 [2]). Thus, the accusatory instrument served its purpose of providing defendant with notice sufficient to prepare a defense and avoid being tried twice for the same offense (see Willis, 44 NY3d at 21).
Accordingly, the Appellate Term's order should be affirmed.

WILSON, Chief Judge (dissenting):

In some states, driving with a low level of alcohol or drugs in your system is unlawful. In New York and 32 other states, it is not [FN1]. Instead, in New York, if the level does not impair your ability to drive, there is no violation of law. Thus, when an accusatory instrument charges a person under Vehicle and Traffic Law (VTL) § 1192 with driving with ability impaired, the law, obviously, requires the instrument to contain factual allegations of impairment. Yet the majority today blesses an accusatory instrument that gives no indication that Agustin Morel's physical or mental abilities to drive were actually impaired. That holding misapprehends and misapplies both our longstanding precedent in People v Cruz (48 NY2d 419, 427 [1979]) and our holding today in People v Dondorfer (— NY3d —, — [2026] [decided today]). The real issue here is the following: the police had plenty of evidence that Mr. Morel's ability to drive was actually impaired. But they failed to include any of that in the accusatory instrument. To protect the rights of all persons in New York to due process of law, our Court has been exceedingly firm that an accusatory instrument must be judged solely by what is within its four corners. Contrary to the majority, I do not deem the allegations within the four corners here sufficient to allege that Mr. Morel's ability to drive was actually impaired. By excusing the People's isolated flub in preparing a misdemeanor complaint, today's holding erodes our due process protections.[*4]I.
The statutory background clarifies how the VTL prohibition on driving while ability impaired by use of marijuana is designed to work. VTL 1192 (4) provides: "No person shall operate a motor vehicle while the person's ability to operate such a motor vehicle is impaired by the use of a drug as defined in this chapter." At the time of Mr. Morel's arrest in 2015, VTL 114-a defined "drug" with a cross reference to a list in Public Health Law (PHL) § 3306, which then included marijuana on the schedule of controlled substances (former PHL 3306, amended by L 2021, ch 92, § 4). When the Legislature decriminalized the use and possession of marijuana through a variety of statutory enactments in 2021 (see Marijuana Regulation and Taxation Act, 2021 NY Laws ch 92), they added marijuana directly into the definition of "drugs" in VTL 114-a and removed marijuana from the list of controlled substances in PHL 3306 (L 2021, ch 92, § 9, eff. March 31, 2021). The Legislature also considered but rejected the addition of a new section to VTL 1192's prohibition on driving while ability impaired that would have specifically outlawed driving while ability impaired by marijuana consumption (see 2021 Senate Bill S854 ["No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the use of cannabis or concentrated cannabis as defined in section 222.00 of the penal law"]). Rather than set out a new definition of driving while ability impaired by marijuana, the Legislature chose to continue relying on the broader prohibition against driving while ability impaired by drugs in VTL 1192 (4).
The Legislature knew that by continuing to use the drug impairment standard of VTL 1192 (4), it was eschewing a zero-tolerance regime (adopted by some states)[FN2] that focuses solely on whether a driver consumed any amount of a prohibited substance before driving. The Court correctly recognizes in People v Dondorfer (— NY3d —, — [2026] [decided today]) that the standard for impairment by drugs in VTL 1192—both the one in place at the time of Mr. Morel's arrest and the version in effect today—is the same standard for impairment by alcohol as we stated in People v Cruz (48 NY2d 419, 427 [1979]), which is focused on impairment of the ability to drive, not mere consumption. As Cruz recognized nearly 50 years ago, and Dondorfer reconfirms today, "the ordinary and accepted meaning" of impairment has always been about inhibition of "an individual's driving abilities" (Dondorfer, — NY3d at —) resulting from consumption of an inhibiting substance, not consumption itself.
The majority's first error is in misapprehending the legal meaning of impairment as determined by Cruz, which makes clear that absent some discernible effect on a person's ability to operate a motor vehicle, an allegation of consumption alone cannot sustain a charge for impaired driving. The majority correctly recites half the holding in Cruz—that "a person is 'impaired' when they have 'actually impaired, to any extent, the physical and mental abilities which [a driver] is expected to possess in order to operate a vehicle as a reasonable and prudent driver'" (majority op at 5, quoting Cruz, 48 NY2d at 427 [emphasis omitted]). That language, standing alone, could imply that any consumption before operating a vehicle—even a sip of wine at communion—is prohibited by the statute. Any human's functioning would be affected, to an [*5]infinitesimal (and perhaps undetectable) degree, by that sip. Yet Cruz makes clear that this is not what the VTL prohibits: "That is not to say, of course, that every person who drinks before driving violates the law. On the contrary the Legislature recognized that the average person can consume a certain amount of alcohol without impairing his ability to operate a motor vehicle as he should" (id. at 426). In the Legislature's estimation, embodied in the statutory scheme, there is a small amount of consumption that, for some people, does not rise to the level of legal impairment.
In the case of alcohol, the Legislature statutorily quantified that amount by providing that a blood alcohol level of .05% or less is presumptive evidence of non-impairment and non-intoxication (VTL 1195 [2] [a]) . The Legislature has not set a similar safe harbor for marijuana or other drugs, but the underlying principle for all is the same: there must be evidence of actual impairment of the ability to drive for VTL 1192 (4) to be violated. That is likely why the People refused to take the position that, under the law, one cannot consume some marijuana before driving (oral argument tr at 26).
Bearing in mind the full holding of Cruz, the factual allegations sustaining the accusatory instrument are not facially sufficient to allege impairment. The applicable test is whether the misdemeanor complaint includes "facts of an evidentiary character" (CPL 100.15 [3]) demonstrating "reasonable cause" to believe he committed the charge of driving while ability impaired (CPL 100.40 [4] [b]). Reasonable cause exists when the complaint contains apparently reliable evidence that is "collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely" Mr. Morel committed the alleged offense (CPL 70.10 [2]). The majority emphasizes that our review of a misdemeanor complaint is "less demanding" than our review of an information (majority op at 4 [citations omitted]), but the key difference —that the People are relieved of their burden to put forth nonhearsay allegations in the accusatory instrument (People v Willis, 44 NY3d 14, 20 [2025], citing People v Casey, 95 NY2d 354, 365 [2000])—is not relevant here because Mr. Morel does not dispute the facts alleged in the accusatory instrument. Nor can that standard be satisfied by legally inapposite or conclusory allegations (see, e.g., Dumas, 68 NY2d at 731 [misdemeanor complaint held to be insufficient where complaint relied solely on "a conclusory statement that the defendant sold marihuana"]; People v Dreyden, 15 NY3d 100 [2010] [similar]). The allegations must still make it "reasonably likely" that the physical or mental abilities Mr. Morel needed to drive as a reasonable and prudent driver were impaired (CPL 70.10 [2]). Further, whether we are reviewing the sufficiency of a misdemeanor complaint or an information, our inquiry is still jurisdictional, as it "'implicat[es] the integrity of the [criminal] process" (Dreyden, 15 NY3d at 103 [citation omitted]).
The facts in the accusatory instrument do not suffice to establish reasonable cause to believe Mr. Morel's abilities to drive safely were impaired. The accusatory instrument does not tell us that Mr. Morel was driving erratically or broke any traffic law, just that Officer Mencatelli, for some reason indiscernible from the instrument itself, approached Mr. Morel as he was sitting behind the wheel of his motionless car. The rest of the accusatory instrument consists entirely of the following five factual allegations: Officer Mencatelli (1) smelled marijuana on Mr. Morel's clothes, (2) saw marijuana ash on Mr. Morel's pants, and (3) noticed Mr. Morel had "watery and bloodshot eyes." Mr. Morel also (4) admitted that he had smoked [*6]"two puffs of marijuana" and (5) refused to take a urine test to "determine the presence of drugs."
Taken together, the first four allegations in the accusatory instrument tell us nothing about impairment of Mr. Morel's ability to drive. All these facts tell us, as Mr. Morel does not dispute, is that he consumed marijuana recently. Certainly, such a practice is dangerous and inadvisable—and it may indeed be bad public policy to have a law like New York's that lets people drive after having consumed small amounts of alcohol or drugs—but that is our law. However, to adequately sustain an accusatory instrument, the People must state facts that meet the relevant legal standard. Drivers having a beer or glass of wine with dinner may have the odor of wine on their breath (or clothes if they spilled some), but as Cruz made clear, whether a person has consumed an impairing substance is necessary, but not sufficient, to establish as a matter of law whether that person's ability to drive has been impaired. For an accusatory instrument to be valid, it must contain factual assertions sufficient to establish every element of the crime charged. The difficulty here is that because driving after consuming an intoxicating substance is not a crime, some fact showing impairment—not merely consumption—is necessary. The majority's observation that Mr. Morel's "watery and bloodshot eyes" were "physical manifestations of the effects of marijuana" (majority op at 6) is inapposite without more, because that fact does not, on its face, establish any effect on the physical abilities necessary for Mr. Morel to drive safely. Unlike allegations of slurred speech or unsteady gait, bloodshot eyes—a common byproduct of allergies, among other benign causes (Christopher J. Gilani et al., Differentiating Urgent and Emergent Causes of Acute Red Eye for the Emergency Physician, Western Journal of Emergency Medicine, No. 18, 509-517, available at 
https://pmc.ncbi.nlm.nih.gov/articles/PMC5391903/ [last accessed Feb. 10, 2026])—do not indicate impairment of one's physical or mental abilities with respect to driving.
Mr. Morel's refusal to submit to a urine test for drugs does not rescue the accusatory instrument (contra majority op at 6). Because Mr. Morel had already admitted using marijuana, a urine test that he was told would "determine the presence of drugs" would reveal nothing that Mr. Morel had not already admitted. In this sense, Mr. Morel's refusal is materially different from that of a driver suspected of driving while impaired by alcohol, both because a blood alcohol concentration test could indicate the driver's level of impairment at the time of the offense and because the VTL has specific gradations of criminality based on specified blood alcohol content levels. In any event, not until today has our Court relied on a refusal to submit to a chemical test in order to establish reasonable cause for purposes of a facial sufficiency challenge, and the cases relied on by the Court to break that new ground notably included allegations in the accusatory instrument related to impairment of the defendant's cognitive abilities (see People v King, 83 Misc 3d 29, 33 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024] [defendant had slurred speech and unsteady gait]; People v Fiumara, 116 AD3d 421, 421 [1st Dept 2014] [same]). The majority contends that I have looked at the relevant indicia of impairment "in isolation" and "refus[e] to consider how they come together as a whole" (majority op at 7-8). But the totality here is clear evidence of recent consumption, which is not evidence of impairment, and bloodshot watery eyes. Taken together, that is insufficient to allege impairment. It is interesting to note that, in opposing Mr. Morel's motion to dismiss the indictment, the People expressly relied on his failure on the horizontal gaze nystagmus test, which the majority admits was improper, and every case on which they relied alleged not just the [*7]odor and/or presence of marijuana, but also the officer's observation of an actual physical impairment such as slurred speech and unsteadiness when standing.
The majority is quite right that we cannot look beyond the face of the misdemeanor complaint to determine its sufficiency (majority op at 3-4), but we can look beyond it to understand what really happened here and why the majority's degradation of due process rewards prosecutorial sloppiness. According to Officer Mencatelli's Report of Refusal, he conducted a Horizontal Gaze Nystagmus test demonstrating that Mr. Morel was impaired. The Report also states that Mr. Morel's balance was unsteady, walking was unsteady, one-leg stand was unsteady and he was inaccurate on the right-hand finger-to-nose test. It also states that Officer Mencatelli saw Mr. Morel make two lane changes without signaling. Those facts should have been included in the misdemeanor complaint; today's holding remedies a simple prosecutorial goof at the cost of weakening our law on jurisdictional sufficiency or impairment.
By avoiding the need to state facts showing actual impairment in the accusatory instrument, the majority opens up countless unimpaired drivers to prosecution. VTL 1192 (4) is not limited to impairment by alcohol or marijuana, but includes hundreds of substances listed in PHL 3306. For example, tens of millions of Americans suffer from an anxiety disorder (see Nat'l Institute of Health, Any Anxiety Disorder, available at 
https://www.nimh.nih.gov/health/statistics/any-anxiety-disorder [last accessed Feb. 10, 2026]). A common prescription to treat anxiety, Xanax, uses an active ingredient, alprazolam, listed in PHL 3306 (c) (1), and has been reported to produce a side effect of dry and irritated eyes (Sabah N. Stafanous et al., The effect of long-term use of benzodiazepines on the eye and retina, Documenta Ophthalmologica (Sept. 1999), available at 
https://link.springer.com/article/10.1023/A:1002418330466 [last accessed Feb. 10, 2026]). If a driver is observed with reddened eyes and a prescription bottle for Xanax in the cupholder, the majority has authorized prosecution through an accusatory instrument alleging only that, because there is reasonable cause to believe that person has violated VTL 1192 (4). The driver's refusal to take a blood test for Xanax adds nothing to the stew. Surely, without something more, the prohibition on impaired driving in VTL 1192 (4), which carries a fine of up to $1000 and a year in jail, is not meant to allow charging such persons [FN3]. Some evidence of impaired driving must be included in the accusatory instrument; none was here, and the type of facts here would be present [*8]for countless circumstances in which people who had consumed some substance, prescription or otherwise, were driving within the bounds protected by law, and yet find themselves facing a criminal charge.
The effect of the majority's holding is to condone the simple error of an officer's failure to transfer facts from one form to another, yet the effects will be anything but small. Not only does today's holding undercut the due process protections embedded into our requirements for jurisdictionally sufficient accusatory instruments, it undermines the Legislature's longstanding allowance of driving while having consumed a small amount of a potentially impairing substance as well as the public policy against unfettered police discretion (People v Belton, 55 NY2d 49, 52 [1982] ["the State Constitution protects the privacy interests of the people of our State . . . against the unfettered discretion of government officials to search or seize"). To me, the answer in this case is simple: fill the form out right.
Order affirmed. Opinion by Judge Rivera. Judges Garcia, Singas, Cannataro and Halligan concur. Chief Judge Wilson dissents in an opinion, in which Judge Troutman concurs.
Decided February 17, 2026

Footnotes

Footnote 1: The dissent incorrectly claims that we only articulate "half the holding in Cruz" (dissenting op at 4). The additional language the dissent cites—that mere consumption of alcohol, by itself, is not unlawful if it does not cause impairment—further explains what the Cruz standard already makes clear, which is that a person does not violate a provision of Vehicle and Traffic Law § 1192 unless they are impaired. As is plain from our analysis, allegations of mere consumption of marijuana, without indicia of impairment, are insufficient to plead a violation of Vehicle and Traffic Law § 1192 (4). Despite the dissent's claims of fealty to the Vehicle and Traffic Law as the Court has interpreted it, it is the dissent that applies the wrong standard. The dissent erroneously states that under Cruz, mere consumption is "necessary, but not sufficient, to establish as a matter of law" that someone's ability to drive is impaired (id. at 7). That is incorrect. The accusatory instrument need only demonstrate "reasonable cause" to believe the defendant committed the crime charged, not impairment "as a matter of law" (Dumas, 68 NY2d at 731).

Footnote 2: Indeed, because we cannot consider the Report of Refusal in our analysis at all, we do not assess the quality of the information contained therein or compare it to the accusatory instrument to draw any conclusions about the quality of the police work.

Footnote 1: See Marijuana Policy Project, Zero Tolerance and Per Se Driving Laws, available at 
https://www.mpp.org/assets/pdf/issues/criminal-justice/264947212-Zero-Tolerance-and-Per-Se-Driving-Laws.pdf?v=1770648413 (last accessed Feb. 10, 2026).

Footnote 2: For example, Arizona make it unlawful to drive "[w]hile there is any drug defined in section 13-3401 or its metabolite in the person's body" (Ariz. Rev. Stat. § 28-1381 [A] [3]).

Footnote 3: The majority's observation that use of Xanax might sometimes produce impairing side effects (majority op at 8-9), makes my point as to Mr. Morel. VTL 1192 (4) requires proof of impairment of one's driving abilities, not merely consumption of a potentially impairing substance. The majority otherwise addresses this hypothetical by reassuring itself that the same fact might support impairment in one context but not another (id.). Why bloodshot eyes support impairment here, and not when someone with bloodshot watery eyes is stopped with a Xanax prescription in the cupholder, is left unsaid. In practice, if history is any guide, I have a guess as to how these distinctions will be drawn (see Jennifer D. Olivia, Decriminalizing Cannabis, 134 Yale LJ Forum 942, 964-965, 971 [2025], available at 
https://yalelawjournal.org/pdf/OlivaYLJForumEssay_xmmzwkjh.pdf [last accessed Feb. 10, 2026] [observing that substances like marijuana have historically drawn disproportionate levels of enforcement against Black and Brown communities]).