People v Dondorfer (2024 NY Slip Op 06432)

People v Dondorfer

2024 NY Slip Op 06432

Decided on December 20, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 20, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, MONTOUR, NOWAK, AND DELCONTE, JJ.

577 KA 23-01056

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT, OPINION AND
v
PHILLIP DONDORFER, DEFENDANT-RESPONDENT. 

VINCENT HEMMING, ACTING DISTRICT ATTORNEY, WARSAW (DANA POOLE OF COUNSEL), FOR APPELLANT.
LEAH R. NOWOTARSKI, PUBLIC DEFENDER, WARSAW (FARES A. RUMI OF COUNSEL), FOR DEFENDANT-RESPONDENT. 
MICHAEL E. MCMAHON, KEW GARDENS (JOHN M. CASTELLANO OF COUNSEL), FOR DISTRICT ATTORNEYS ASSOCIATION OF THE STATE OF NEW YORK, AMICUS CURIAE.

 Appeal from an order of the Wyoming County Court (Michael M. Mohun, J.), dated June 12, 2023. The order granted defendant's renewed motion seeking to dismiss count 1 of the indictment. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law, the renewed motion is denied, count 1 of the indictment is reinstated, and the matter is remitted to Wyoming County Court for further proceedings on the indictment.
Opinion by Curran, J.:
The sole question raised on this appeal is whether County Court erred in granting defendant's renewed motion to dismiss count 1 of the indictment on, inter alia, the basis that the People failed to properly instruct the grand jury on the definition of the term "impaired" insofar as it pertained to count 1, which charged defendant with felony aggravated driving while intoxicated (DWI) based on driving a vehicle while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs with a child present (Vehicle and Traffic Law § 1192 [2-a] [b]; [4-a]). We answer that question in the affirmative and conclude that the court erred in granting the renewed motion inasmuch as, relying on principles of statutory construction, the People correctly instructed the grand jury that the term "impaired" in the context of Vehicle and Traffic Law § 1192 (4-a) is defined as the defendant's consumption of a combination of drugs and alcohol to the point that it "has actually impaired, to any extent, the physical and mental abilities which [the defendant] is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (People v Cruz, 48 NY2d 419, 427 [1979], appeal dismissed 446 US 901 [1980]).
In reaching that conclusion, we also note our respectful disagreement with the Third Department's decision in People v Caden N. (189 AD3d 84 [3d Dept 2020], lv denied 36 NY3d 1050 [2021]), which defined the term "impaired" in the context of drug consumption in accordance with the heightened standard typically applicable in cases of "intoxication" by alcohol (see Cruz, 48 NY2d at 428). Ultimately, we conclude that the term "impaired" should be defined consistently across the Vehicle and Traffic Law—whether in the context of impairment by alcohol or in the context of impairment by drugs or a combination of drugs and alcohol.
I.
Just after midnight, the police stopped a vehicle being driven by defendant because its inspection was expired. Also in the vehicle at that time was defendant's 15-year-old daughter. During the vehicle stop, the police determined that defendant was impaired by drugs and alcohol based on his observed demeanor, his admission to recently using those substances, and his failure to successfully perform several field sobriety tests. That determination was further corroborated by a certified drug recognition officer summoned to the scene to perform an additional field evaluation.
As a result, the People presented two charges for the grand jury's consideration: aggravated DWI predicated on defendant driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs with a child present (Vehicle and Traffic Law § 1192 [2-a] [b]; [4-a]), and uninspected vehicle (§ 306 [b]). With respect to the DWI count, the People relevantly instructed the grand jury on the definition of the term "impaired" as follows:
"A person's ability to operate a motor vehicle is impaired by the combined use of alcohol and drugs when that combination of alcohol and drugs has actually impaired, to any extent, the physical and mental abilities which such person is expected to possess in order to operate a motor vehicle as a reasonable and prudent driver."
After hearing witness testimony related to the vehicle stop and defendant's arrest, the grand jury indicted defendant on both charged counts. Defendant filed an omnibus motion requesting, in relevant part, that the court dismiss the indictment because the grand jury had not properly been instructed. The court denied defendant's motion to that extent.
As the parties prepared for a nonjury trial, defendant requested that the court, in its trial charge, define the term impairment by a combination of drugs and alcohol, as used in Vehicle and Traffic Law § 1192 (4-a), consistent with the intoxication standard used by the Third Department in Caden N. (189 AD3d at 90)—i.e., whether his consumption of a combination of drugs and alcohol rendered him "incapable of employing the physical and mental abilities which he . . . is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (id. [internal quotation marks omitted]). Effectively, defendant wanted the court to define "impaired" in this case according to the standard typically used to show "intoxication" by alcohol (see generally Cruz, 48 NY2d at 428). The People objected, arguing that the standard requested by defendant applied only to intoxication by alcohol and that the correct definition to use in this context was whether defendant's consumption of a combination of drugs and alcohol "has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (id. at 427). The court agreed with defendant that the intoxication standard should be used in its charge.
Before the trial commenced, defendant renewed his motion to the extent it sought dismissal of count 1 of the indictment on, inter alia, the bases that there was legally insufficient evidence to support that count on the element of impairment and that the instructions to the grand jury on that count used the incorrect definition of the term "impaired." The court granted defendant's renewed motion, referencing its prior ruling that it would follow the intoxication standard, and concluding that "the use of the lower, 'to any extent' standard [by the People] prevented the grand jury from properly assessing whether legally sufficient evidence existed to establish all of the material elements of [c]ount [1]" of the indictment. The People appeal (see CPL 450.20 [1]), and we reverse.
II.
A defendant may move to dismiss an indictment due to defective grand jury proceedings where, inter alia, the proceeding "fails to conform to the requirements of [CPL article 190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]; see 210.20 [1] [c]). "With respect to grand jury instructions, CPL 190.25 (6) provides, as relevant here, that, '[w]here necessary or appropriate, the court or the district attorney, or both, must instruct the grand jury concerning the law with respect to its duties or any [*2]matter before it' " (People v Ball, 175 AD3d 987, 988 [4th Dept 2019], affd 35 NY3d 1009 [2020]). Nonetheless, a grand jury "need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law," and it is "sufficient if the [prosecutor] provides the [g]rand [j]ury with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime" (People v Calbud, Inc., 49 NY2d 389, 394-395 [1980]).
Here, the court granted the renewed motion to dismiss count 1 of the indictment, charging defendant with aggravated DWI. The court concluded that the People incorrectly instructed the grand jury on that count with respect to the definition of the term "impaired." Neither party disputes that, in defining impairment to the grand jury in the context of the combined influence of drugs and alcohol, the People used the "to any extent" standard set forth by the Court of Appeals in Cruz (48 NY2d at 427), and did not use the intoxication standard used by the Third Department to define impairment in Caden N. (189 AD3d at 90-91). Thus, whether the court properly granted the renewed motion hinges on which of those two definitions is correct in the context of Vehicle and Traffic Law § 1192 (4-a). For the reasons set forth below, we conclude that the People used the correct definition of impairment, and therefore, the court erred in granting the renewed motion to dismiss count 1 of the indictment.
III.
A.
We begin by considering basic principles of statutory interpretation and conclude, in applying those principles, that the People correctly instructed the grand jury regarding the definition of the term "impaired" as used in Vehicle and Traffic Law § 1192 (4-a). In interpreting a statute, it is "fundamental that a court . . . should attempt to effectuate the intent of the [l]egislature" (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]; see People v Roberts, 31 NY3d 406, 418 [2018]). Of course, "the clearest indicator of legislative intent is the statutory text," and therefore we start with the plain meaning of the language itself (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). "[E]ffect and meaning must, if possible, be given to the entire statute and every part and word thereof" (McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]; see People v Talluto, 39 NY3d 306, 311 [2022]). Further, "[a] statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent" (McKinney's Cons Laws of NY, Book 1, Statutes § 97; see People v Mobil Oil Corp., 48 NY2d 192, 199 [1979]). "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (State of New York v Patricia II., 6 NY3d 160, 162 [2006] [internal quotation marks omitted]; see Matter of Anonymous v Molik, 32 NY3d 30, 37 [2018]).
Typically, "[i]n the absence of any controlling statutory definition, we construe words of ordinary import with their usual and commonly understood meaning" (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479 [2001]; see McKinney's Cons Laws of NY, Book 1, Statutes § 232). Nevertheless, "[a] different rule applies when statutory language has received a technical or peculiar significance from long habitual construction, or by legislative definition" (People v Duggins, 3 NY3d 522, 528 [2004] [internal quotation marks omitted]; see McKinney's Cons Laws of NY, Book 1, Statutes § 233). "[W]hen a statute does not define a particular [technical] term, it is presumed that the term should be given its precise and well settled legal meaning in the jurisprudence of the state" (Duggins, 3 NY3d at 528 [internal quotation marks omitted]; see Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173 [1988]). Additionally, "[i]t is elementary that where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute" (People v Bolden, 81 NY2d 146, 151 [1993] [internal quotation marks omitted]; see McKinney's Cons Laws of NY, Book 1, Statutes § 236; People v Corr, — NY3d —, 2024 NY Slip Op 03379, *2 [2024]).
Where "the words chosen have a definite meaning, which involves no absurdity or contradiction, then there is no room for construction and courts have no right to add or take away from that meaning" (Roberts, 31 NY3d at 418 [internal quotation marks omitted]; see People v [*3]Robinson, 95 NY2d 179, 182 [2000]). Indeed, "[c]ourts cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the [l]egislature did not see fit to enact" (Corr, — NY3d at —, 2024 NY Slip Op 03379 at *2 [internal quotation marks omitted]; see People v Hardy, 35 NY3d 466, 474 [2020]).
B.
In applying the aforementioned general principles, we conclude that the term "impaired" in Vehicle and Traffic Law § 1192 (4-a) should be defined consistently with the definition of that same term in Cruz—i.e., whether a defendant's consumption of drugs, or a combination of drugs and alcohol, "has actually impaired, to any extent, the physical and mental abilities which [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (48 NY2d at 427). We conclude that accepting the definition of the term "impaired" advocated by defendant and adopted by the court would run afoul of those general principles and effectively—and impermissibly—rewrite the statute without any legislative involvement.
Vehicle and Traffic Law § 1192 (2-a) (b) provides, in relevant part, that "[n]o person shall operate a motor vehicle in violation of[, inter alia,] subdivision [(4-a)] of this section while a child who is [15] years of age or less is a passenger in such a motor vehicle." In turn, section 1192 (4-a) provides that "[n]o person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the combined influence of drugs or of alcohol and any drug or drugs" (emphasis added). The Vehicle and Traffic Law does not define the term "impaired." Nevertheless, the meaning of that term is readily ascertainable given its "precise and well settled legal meaning in the jurisprudence of the state" (Duggins, 3 NY3d at 528 [internal quotation marks omitted]; see McKinney's Cons Laws of NY, Book 1, Statutes § 233). We conclude that the longstanding judicial interpretation of the word "impaired" as used in the Vehicle and Traffic Law supports the People's proffered definition of that term in the context of section 1192 (4-a), rather than the one used by the court.
Specifically, the Court of Appeals, in Cruz, clearly defined the term "impaired" to mean—in the context of alcohol consumption—that a defendant "has actually impaired, to any extent, the physical and mental abilities which [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (48 NY2d at 427; see generally Vehicle and Traffic Law § 1192 [1]). In defining "impaired" that way, the Court sharply distinguished the term "impaired" from the separate term "intoxication," as used in Vehicle and Traffic Law § 1192 (3), noting that the latter term denoted "a greater degree of impairment which is reached when [a] driver has voluntarily consumed alcohol to the extent that [they are] incapable of employing the physical and mental abilities which [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (Cruz, 48 NY2d at 428). The Court concluded that the terms impaired and intoxicated are not interchangeable, which is entirely consistent with the principle that, by using separate terms, the legislature is presumed to have given each word a different meaning. Indeed, to conclude otherwise—i.e., to read impairment by drugs as meaning, effectively, intoxication—would be to render the word impaired superfluous (see Matter of Tonis v Board of Regents of Univ. of State of N.Y., 295 NY 286, 293 [1946]; see generally McKinney's Cons Laws of NY, Book 1, Statutes § 231). Consequently, in light of the separate definitions given to the terms "impaired" and "intoxication," by using the term "impaired" in Vehicle and Traffic Law § 1192 (4-a), the legislature clearly did not intend for that term to be defined in accordance with the standard used for the term "intoxication."
The Court of Appeals reemphasized its conclusion in Cruz—i.e., that the words "impaired" and "intoxicated" had entirely separate and distinct meanings—in People v Litto (8 NY3d 692, 706 [2007]). In that case, the Court concluded that a person could not be convicted of driving while intoxicated while under the influence of a drug inasmuch as "[b]ased on the language, history and scheme of the statute, . . . the [l]egislature . . . intended to use 'intoxication' to refer to a disordered state of mind caused by alcohol, not by drugs" (id. at 694). It noted that "[t]he legislative history not only manifests legislative intent to employ the term 'intoxicated' to refer to persons inebriated by alcohol and to prevent them from driving, but also reveals a scheme by which the statute would reach that goal" (id. at 705). If inebriation by drugs was contemplated "in the definition of 'intoxication' . . . the [l]egislature would have had no reason to add another misdemeanor" to the Vehicle and Traffic Law—i.e., subsections 1192 (4) or (4-a) (Litto, 8 NY3d at 706-707). Rather than altering the Vehicle and Traffic Law to subsume the [*4]effects of drug use into the definition of intoxication, "the [l]egislature, after careful study and debate, concluded that a driver could be convicted for impairment by drugs" (id. at 707 [emphasis added]).
In short, had the legislature intended for impairment by the combined effect of drugs and alcohol to use the same standard as for intoxication by alcohol—as defined in Cruz—it easily could have done so (see generally McKinney's Cons Laws of NY, Book 1, Statutes § 74). To the contrary, since the Court of Appeals decided Cruz and Litto, the legislature has never taken any steps to alter the judicial definitions of the terms "intoxicated" or "impaired," nor has it ever sought to define impairment by a combination of drugs and alcohol in accordance with the intoxication standard. Thus, there is simply no justification for us to depart from the Cruz definition of impairment in favor of the intoxication standard, given the lack of legislative action on the topic and the longstanding judicial construction of the term.
Indeed, it is well settled that "[w]here a word has received a judicial construction it will almost invariably be given the same meaning where it is again used by the [l]egislature in connection with the same subject" (McKinney's Cons Laws of NY, Book 1, Statutes § 75; see Bossuk v Steinberg, 58 NY2d 916, 918 [1983]). Thus, when the legislature enacted Vehicle and Traffic Law § 1192 (4-a) using the term "impaired" (see L 2006, ch 732, § 2), it was "deemed to have had knowledge of the construction [of the term impaired] which had previously been placed upon it [in Cruz], and to have used [that term] in subservience to such judicial meaning" (McKinney's Cons Laws of NY, Book 1, Statutes § 75, Comment; see Feder v Caliguira, 8 NY2d 400, 404 [1960]). Of course, the legislature could have altered the definition of the term "impaired" in the context of section 1192 (4-a) had it so desired. It chose not to do so, and therefore, we should not do so either (see generally Pouch v Prudential Ins. Co. of Am., 204 NY 281, 287 [1912]).
C.
In support of the court's statutory interpretation, defendant asserts that we should affirm on the basis that the People's proffered interpretation is absurd and, alternatively, that it runs afoul of the rule of lenity. We reject both of those arguments. For all of the reasons set forth above, we reject defendant's argument that the People's interpretation of the word "impaired" would result in an absurdity (see generally McKinney's Cons Laws of NY, Book 1, Statutes § 145). Indeed, in our view, it is defendant's proffered construction of the term that would result in an absurdity inasmuch as it would violate the aforementioned principles of statutory construction that the legislature is presumed to use different words to mean different things and that a word is presumed to be used in the same sense throughout a statute (see McKinney's Cons Laws of NY, Book 1, Statutes §§ 231, 236). Further, the People's construction of "impaired" is not absurd because it is consistent with longstanding case law that draws a sharp distinction between intoxication and impairment and that effectively resolved the interpretive question at issue here (see Litto, 8 NY3d at 706-707; Cruz, 48 NY2d at 427-428).
Similarly, we conclude that the rule of lenity has no application to this case and does not support an affirmance (see generally People v Badji, 36 NY3d 393, 404 [2021]). That rule, which holds that "ambiguity in a criminal statute should be construed in defendant's favor, . . . applies only if, after seizing everything from which aid can be derived . . . [the court] can make no more than a guess as to what [the legislature] intended. To invoke the rule, [the court] must conclude that there is a grievous ambiguity or uncertainty in the statute" (id. at 404-405 [internal quotation marks omitted]).
Here, there is no grievous ambiguity in Vehicle and Traffic Law § 1192 (4-a) that warrants application of the rule of lenity to define "impaired" by a combination of drugs and alcohol under the intoxication standard. As discussed above, the term "impaired" has been defined by the "to any extent" standard for almost 50 years, and has clearly and consistently been distinguished from the term "intoxication" for all of that time (see Litto, 8 NY3d at 706-707; Cruz, 48 NY2d at 427-428). Further, since that time—and despite frequent drafting changes to the relevant provisions of the Vehicle and Traffic Law—the legislature has never altered Cruz's definition of the word impaired, even when it added the provision at issue here. In short, given that background, it is simply not true that, in defining impairment under Vehicle and Traffic Law § 1192 (4-a), we can make no more than a guess as to the legislature's intention (see Badji, 36 [*5]NY3d at 404-405). Moreover, the existence of one aberrational appellate division decision is not, by itself, a reason to apply the rule of lenity, and defendant offers no authority for such a proposition. Indeed, " '[t]he mere possibility of articulating a narrower construction [of a statutory term] . . . does not by itself make the rule of lenity applicable' " here (id. at 404).
IV.
Moving beyond the application of basic principles of statutory interpretation, we respectfully disagree with the interpretation of the term "impaired" by drugs offered by the Third Department in Caden N., and adopted by the court in granting defendant's renewed motion (189 AD3d at 89-91). Indeed, for the reasons outlined above, we conclude that the interpretation of the term "impaired" set forth in Caden N. is not supported by the statutory text and is inconsistent with precedent from the Court of Appeals. Additionally, as set forth below, we also respectfully disagree with the rationale of Caden N.
A.
Caden N. involved a prosecution for vehicular manslaughter in the first degree under the Penal Law, which requires the People to show that the defendant caused the death of one or more persons while operating a motor vehicle in violation of, inter alia, Vehicle and Traffic Law § 1192 (4-a) (see Penal Law §§ 125.12 [1]; 125.13 [4]). In considering the defendant's contention that the conviction was not supported by legally sufficient evidence and that the verdict was against the weight of the evidence, the Third Department in Caden N. set forth the relevant statutory terms and, centrally, offered its view on the proper definition of the word "impaired" in the context of drug use (189 AD3d at 89).[FN1]
Although the Third Department noted that "the parties both rel[ied] on the Court of Appeals' definition of 'impairment by alcohol' as set forth in Cruz to supply the relevant definition of 'impairment by the use of a drug,' " it nevertheless concluded that said "definition is misplaced in the context" of a vehicular manslaughter prosecution (id. at 90). The Third Department noted that the relevant statutory framework operated under the assumption that "the greater a driver's ability to function has been compromised the greater the penalty imposed" (id.). Specifically, in considering Penal Law § 125.12 (1), it observed that a person "who operates a motor vehicle and causes the death of another while impaired by alcohol is not subject to a conviction for vehicular manslaughter . . . , whereas one who causes such death while intoxicated by alcohol or impaired by a drug (or a combination of alcohol and drugs) falls within the statute's reach" (Caden N., 189 AD3d at 90).
Consequently, the Third Department concluded that "the degree of impairment necessary to convict a motorist of vehicular manslaughter . . . that was caused while such motorist was under the influence of [a drug] . . . is the same degree of impairment as would be necessary to sustain such a conviction of driving while intoxicated by alcohol" (id.). Supporting that conclusion, the Third Department noted that the "statutory scheme imposes equal sanctions upon motorists who cause death while intoxicated by alcohol or while impaired by a drug," and that "[s]uch a distinction between impairment by alcohol and impairment by a drug (or a combination of both) can only be deemed consistent with the legislative scheme if the same standard is applied to each misdemeanor category included in the vehicular manslaughter statute" (id.). Ultimately, the Third Department concluded that, under its definition of the term impairment, there was nevertheless legally sufficient evidence to support the conviction and the verdict was not against the weight of the evidence in that regard (id. at 94-95).
B.
In reaching its conclusion in Caden N. that impairment by drugs should be defined according to the intoxication standard under Cruz, the Third Department was clearly concerned about the disparity created by finding a person guilty of vehicular manslaughter due to impairment by drugs but not due to impairment by alcohol. We respectfully disagree with that rationale. In our view, Caden N.'s focus on the disparate punishment between a person found guilty of vehicular manslaughter based on impairment by alcohol as opposed to impairment by drugs does not have any bearing on the definition of the word impairment, as that term is used in the relevant statutes. That focus on the disparate punishment conflicts with the clear language of the relevant statutes, and the consistent longstanding judicial interpretation of that language (see Litto, 8 NY3d at 706-707; Cruz, 48 NY2d at 427-428).
When interpreting a statute, courts "must determine the consistency of the [l]egislature's reaching its goal with the purposes underlying the legislative scheme" (Litto, 8 NY3d at 705 [internal quotation marks omitted]). Nonetheless, "the [l]egislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves" (Sheehy v Big Flats Community Day, 73 NY2d 629, 634 [1989]). Here, the disparate punishment, i.e., the inconsistency, identified in Caden N. was a goal that the legislature had the right and authority to choose. As the Court of Appeals indicated in Litto, the legislature has consistently sought to treat alcohol and drugs differently in the Vehicle and Traffic Law's DWI scheme by differentiating between intoxication by alcohol and impairment by drugs (8 NY3d at 694, 697-707). By electing to punish a person impaired by drugs who commits vehicular manslaughter the same way that it punishes a person intoxicated by alcohol, the legislature has made a quintessential policy choice, which the courts are not permitted to change. Indeed, accepting the disparity of punishment identified in Caden N., we do not see any reason why the legislature could not rationally choose to punish impairment by drugs the same as intoxication by alcohol. The legislature could rationally conclude that the harm posed by drug impairment is more serious than the harm posed by alcohol impairment, and it is not for this Court to pass on the wisdom of that choice; particularly where, as here, the term "impaired" has a longstanding judicially-defined meaning.
We also do not think that the logic of Caden N. can be confined solely to cases involving vehicular manslaughter, despite suggestions to that effect in the decision (189 AD3d at 89). In our view, there is nothing about Caden N.'s reading of the statutory text that would distinguish impairment by a combination of drugs and alcohol under Vehicle and Traffic Law § 1192 (4-a) from similar impairment that results in vehicular manslaughter. There is no statutory language—located either in the Penal Law or the Vehicle and Traffic Law—to support the conclusion that the word "impaired" has a different meaning depending on the specific criminal charges being pursued. Absent any such language, we cannot conclude that the word "impaired" has a different meaning only when manslaughter is involved.
Ultimately, as discussed above, the Court of Appeals has continually drawn a sharp distinction between the terms intoxication and impairment, concluding that the former term only applies to alcohol inebriation (see Litto, 8 NY3d at 707; see also Cruz, 48 NY2d at 427-428). We thus decline to accept Caden N.'s adoption of an intoxication standard to define impairment by a combination of drugs and alcohol.
V.
We also disagree with defendant's assertion that the criminal jury instructions (CJI) afford another reason to define "impaired" consistent with the definition in Caden N. Defendant is correct that the CJI incorporated Caden N.'s definition of the term impaired into its basic instruction (see CJI2d[NY] Vehicle and Traffic Law § 1192 [4-a]).
However, although "the model charges [in the CJI] contain the 'preferred phrasing' of legal instructions" (People v J.L., 36 NY3d 112, 122 [2020]), "a trial judge is not obligated to use the standard jury instructions" (People v Hill, 52 AD3d 380, 382 [1st Dept 2008]). Indeed, the explanatory note accompanying the relevant charge specifically noted "that a trial court is not bound to follow the CJI2d instruction," and indicated that it had incorporated the Caden N. definition into its general instruction "until an appellate court decides otherwise" (CJI2d[NY] Vehicle and Traffic Law § 1192 [4-a], Explanatory Note). In light of the above statutory analysis, and our disagreement with Caden N.'s reasoning, the CJI's instruction does not bear on [*6]the resolution of this case.
VI.
Accordingly, the order should be reversed, the renewed motion denied, and count 1 of the indictment reinstated, and the matter should be remitted to County Court for further proceedings on the indictment.
Entered: December 20, 2024
Ann Dillon Flynn
Clerk of the Court

Footnotes

Footnote 1: Specifically at issue in Caden N. was whether the defendant was impaired by drugs under Vehicle and Traffic Law § 1192 (4). This appeal involves whether defendant was impaired by the combined effect of drugs and alcohol under Vehicle and Traffic Law § 1192 (4-a). Ultimately, that is a distinction without a difference for purposes of our analysis.