■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v SIDNEY DAVIS, Respondent. [595 NYS2d 778] —Order of the Supreme Court, New York County (Charles J. Tejada, J.), entered July 8, 1992, which granted defendant's motion to suppress physical evidence and statements after a combined *Mapp/Huntley* hearing, unanimously reversed, on the law, and the indictment reinstated.

Defendant had been charged with criminal sale and criminal possession of a controlled substance in the third degree. On appeal, the People argue that on the facts presented, the police had probable cause to arrest defendant and, accordingly, that despite the lack of a formal arrest, they had the authority to frisk him.

The relevant evidence can be briefly stated. On the afternoon of January 4, 1992, Justin McCormack, a police officer trained in narcotics apprehension, and his partner were in Jackie Robinson Park on 149th Street, a notorious drug location. They saw defendant and another person interact with Robert Tiru. Tiru looked around, reached into his pocket,

extracted money and gave it to defendant in exchange for something.

After observing this exchange, McCormack turned to his partner and said, "it looks like they just did a deal." Tiru kept the contents cupped in his hand as they walked away. The officers never lost sight of the parties. As the officers approached, Tiru threw the contents to the ground. McCormack there found three vials of crack. The officers then stopped the men, prevented their exit, and frisked them. McCormack's partner, in frisking defendant, felt what seemed to be three more vials of crack in defendant's pocket, which he reported to McCormack. McCormack reached in and extracted three vials of crack. Defendant claimed that he was only holding them for someone else. At that point in time, defendant was formally arrested.

The hearing court credited police officer testimony, but concluded as a matter of law that inasmuch as the officers had not explicitly informed defendant he was under arrest, there had been no predicate for a full-blown search.

The reasoning of the trial court suggests that if the officer had stated formally that defendant was under arrest, a different standard would have been applicable. Under the facts herein this was error. "[A] police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or offense in his presence." *(People v De Bour,* 40 NY2d 210, 223.)

Probable cause need not rise to the level of proof beyond a reasonable doubt, nor even make out a *prima facie* case *(People v Rivera,* 67 AD2d 867). Rather, probable cause exists when the evidence available to the arresting officer would lead a reasonably prudent person to believe that the arrestee has committed a crime. Thus, the "determination of probable cause deals not with technicalities but with probabilities which must perforce include the practical and factual considerations of everyday life acted upon by reasonable and prudent men under the totality of the circumstances presented." *(People v Denti,* 44 AD2d 44, 47.)

Here, a crime took place before the officers' eyes in a drug prone location: criminal possession of the abandoned crack, with respect to Tiru, and the sale with respect to defendant— since the suspicion of a sale was confirmed by the abandoned crack. This established the basis for probable cause, rather than merely satisfy the lower standard for founded suspicion. An arrest was justified *(People v De Bour, supra,* at 223; *People v McRay,* 51 NY2d 594, 601-605).

To the extent that the court would have required the magic words of a formal arrest, before a frisk could be conducted, it misconstrued the law. So long as there is probable cause, the fact that a search occurs before the formal arrest does not vitiate the search *(People v Landy,* 59 NY2d 369, 377). It does not make sense to conclude that this was not an arrest situation. If the defendant had been challenging the mere stop, without the other evidence in this case, the strongest argument in his arsenal would be that this type of stop was not for mere inquiry, but constituted an arrest, which would then lead to an analysis of whether there existed probable cause.

Defendant's challenge to the frisk on the theory that there was no weapon, must fail; this was a search incident to a lawful arrest. Defendant's contention that this reasonable suspicion somehow did not rise to probable cause not only misconstrues reasonable suspicion, but ignores the fact that police had sufficient information to spell out probable cause to arrest. Whether or not an officer felt additional vials in defendant's pocket, and regardless of the construction to be put on this surmise, the salient fact is that, notwithstanding such additional information, the police had a right to a search on the basis of their recovery of the abandoned crack vials coupled with their prior observations in a drug-prone area. The challenge to the frisk also is a means of diverting the analysis away from the appropriate inquiry.

Defendant's authorities essentially address either "bulge" cases, or "sales" cases where only ambiguous conduct was observed. These authorities do not reach a case such as the present one, where an apparent sale was coupled with a location and with an abandonment of the merchandise of the sale.

Since suppression of statements as well as physical evidence was predicated on the court's erroneous analysis of this arrest, the order of suppression must be reversed in its entirety. Concur—Rosenberger, J. P., Ellerin, Ross, Asch and Kassal, JJ.