People v Payne (2025 NY Slip Op 50920(U))

[*1]

People v Payne

2025 NY Slip Op 50920(U)

Decided on June 6, 2025

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 6, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Vaderrick Payne, Defendant.

Docket No. CR-014317-24BX

Defense: Tyriek Mack, Esq. and Danielle Altchiler, Esq. of The Bronx Defenders
Prosecution: ADA Tyler Ames and ADA Sasha Abbott of the Bronx County District Attorney's Office.

Daniel M. Lewis, J.

On June 9, 2024, the defendant was arraigned on charges of Vehicle and Traffic Law §§ 1192 (2), 1192 (3), and 1192 (1), based on his alleged operation of a motor vehicle the previous day at approximately 6:40PM, at East 156th Street and Garrison Avenue in the Bronx, while in an intoxicated condition as evidenced by a breathalyzer test showing above .08% blood alcohol content and while his ability was impaired by the consumption of alcohol. At arraignment, the People served CPL 710.30 (1) (a) notice for a statement made on scene at 6:42PM to Police Officer (P.O.) Gabriel Cruz. No subsequent CPL 710.30 (1) (a) notices were filed within the 15-day statutory period.
On August 23, 2024, defense filed an omnibus motion requesting suppression of the defendant's statements or, in the alternative, for various hearings. On September 18, 2024, J. Bowen granted Dunaway, Huntley, and Mapp hearings, but denied the request for Gursy and Atkins hearings. On December 12, 2024, defense file a second omnibus motion requesting preclusion of the noticed statements. On April 2, 2025, J. González-Taylor issued a decision, deferring the decision to the trial court.
On May 7, 2025, the undersigned presided over the Dunaway, Huntley, and Mapp hearings. The People called two witnesses: Lieutenant (LT) Ramandeep Lehra and P.O. Johery Garcia Rosario. Additionally, LT Lehra's body-worn camera (BWC) footage, P.O. Garcia Rosario's BWC footage, and the video footage from the intoxicated driver testing unit (IDTU) were accepted into evidence on stipulation.
Below constitutes the Court's decision on defense's preclusion motion, the findings of fact, and the conclusions of law from the Dunaway, Huntley, and Mapp hearings.
I. PRECLUSION OF THE NOTICED STATEMENTS
Prior to the suppression hearing, defense moved to preclude the noticed statement, arguing that it was inadequately noticed because the time and identity of the listener were [*2]incorrect.
Persuasive appellate authority holds that a defendant "waive[s] his right to challenge the adequacy of the CPL 710.30 notice" by moving for suppression of the statements., (People v Williams, 238 AD2d 914 [4th Dept. 1997]). This Court agrees. The act of defense filing its August 23, 2024, suppression motion concedes the adequacy of the notice itself.
Moreover, the Court disagrees that the People's CPL 710.30 (1) (a) notice was inadequate. "[T]he purpose of CPL 710.30 is to inform a defendant that the People intend to offer evidence of a statement to a public officer at trial so that a timely motion to suppress the evidence may be made" (People v Rodney, 85 NY2d 289, 291-92 [1995]). "So long as the intent to utilize the statement . . . at trial is clearly stated and the notice given is not misleading as to the number or specification of the statements . . . the notice is generally sufficient, even if not complete in every detail" (People v Centeno, 168 Misc 2d 172, 176-77 [Sup Ct, NY County 1995]). To that end, courts routinely look to whether the People's CPL 710.30 (1) (a) notice frustrated the controlling statute's purpose than whether the notice "lacked certain talismanic details" (Id. at 178; see, e.g., People v Bowes, 206 AD3d 1260 [3rd Dept. 2022] [denying preclusion when the People's CPL 710.30 (1) (a) notice incorrectly identified the officer to whom the defendant made the statement but otherwise comported with the statutory requirements]; People v Rivera, 306 AD2d 186 [1st Dept. 2003] [denying preclusion when the time and location of the People's CPL 710.30 (1) (a) notice differed from the testimony during the suppression hearing]).
In the instant matter, the People's CPL 710.30 (1) (a) notice was timely served within fifteen days after the defendant's arraignment, clearly stated the People's intention to use the statement at trial, and did not mislead as to the number or sum and substance of the statements. Therefore, even if the waiver exception did not apply, which it does, this Court would deny preclusion.
As an alternate theory, defense posits that the People's statement should be precluded because the defendant did not make the statement at issue. As a preclusion matter, this is similarly unavailing. Whether the defendant made the statement or not is irrelevant at the suppression hearings (People v Washington, 51 NY2d 214, 220-21 [1980] ["[T]he court has long abandoned the idea that trustworthiness and voluntariness are synonymous . . . . [A]ny dispute as to whether the defendant made the statement would present a factual question for the jury"].
For the foregoing reasons, defense's motion to preclude the noticed statement is DENIED.
II. FINDINGS OF FACT
LT Ramandeep Lehra
LT Lehra testified to the following:
LT Lehra has worked as an NYPD officer for twelve years and has been assigned to the 41st Precinct as a compliance supervisor for one year. He has made 150 arrests and has supervised approximately twenty arrests for DWI. At the Police Academy, he was trained to recognize the signs of someone under the influence of alcohol, and in his professional and personal lives he has several times observed others become intoxicated after consuming alcohol.
On June 8, 2024, at approximately 6:40PM, LT Lehra was on duty, in uniform, in a marked patrol car with his driver/operator, P.O. Gabriel Cruz, and serving as a patrol supervisor, [*3]when he responded to a radio run reporting a motor vehicle accident at East 156th Street and Garrison Avenue in Bronx County. The report also indicated that a man struck a pole with his car, was on scene jumping up and down, and was possibly intoxicated. The location is a two-lane street heading northbound and southbound with parking lanes on both sides in a commercial area. At the date and time in question, it was a clear day with sunny conditions.
Upon arrival, LT Lehra observed a man, who he identified as the defendant, standing outside and looking at the front of a black, four-door Dodge Ram, which was damaged and had a "busted" tire. LT Lehra believed the vehicle was not drivable due to the physical damage to the front bumper, the busted tire, and the defendant's assertion that the car was not drivable. The vehicle was running and parked in the middle of the street facing northbound. On cross, LT Lehra admitted that he never saw the defendant driving the vehicle.
LT Lehra approached the defendant, who was visibly upset, and asked him questions including what was going on, what happened to the car, and information about the accident to ensure that no one needed medical attention and to locate the other car involved. Within one to two minutes of LT Lehra interacting with the defendant, he detected the strong smell of alcohol on the defendant. LT Lehra also spoke to the passenger, a female who was outside the car who stated that it was her birthday and that they were at a party.
During LT Lehra's interaction with the defendant, he also observed that the defendant avoided answering his questions, only replying that somebody hit him and left the scene; mumbled his responses and had slurred speech; could barely walk; had red, bloodshot eyes; and paced back and forth. Based on this, LT Lehra concluded that the defendant was high on something and intoxicated. Defendant also admitted to driving the car.
LT Lehra also observed several small, full bottles of tequila from a space on the driver's side door, which he discovered when he opened the driver's side door. LT Lehra opened the door because he saw a bottle of alcohol on the driver's side seat despite some tint on the driver's side window and because doing so is part of standard police procedure for a DWI investigation.
BWC Footage of LT Lehra
The Court reviewed the entirety of LT Lehra's BWC and particularly notes the following:
• At 7:46pm, LT Lehra arrived at the scene and approached a black vehicle, which was off and parked in the bike lane facing southbound. The defendant was examining the damage to the front of the vehicle. The defendant said, "He fucking hit me." LT Lehra asked the defendant, "What's going on, bro? What happened?" The defendant walked to the driver's side door, said, "He fucking hit me, and he left," opened the driver's side door, said, "I'm just trying to make it to my house," and then placed one foot inside the vehicle. The defendant's eyes did not appear bloodshot or red.
• At that point, LT Lehra said, "Hold on, one minute; where are you going?" and placed his hand on the car door. LT Lehra used a flashlight to look at the interior of the vehicle. The defendant then exited the vehicle, closed the door, and requested that the officers look at the damage to the vehicle. Shortly thereafter, a female comes into view, and LT Lehra asked who hit the car. Both the female and the defendant said they did not know. The defendant's speech was slurred while he spoke to the officers.
• Between 7:48-7:49PM, the defendant examined the damage to the vehicle and reiterated [*4]that another car hit him. It does not appear that the defendant had trouble walking.
• At 7:50PM, LT Lehra opened the driver's side door. Shortly thereafter, the camera shows two small bottles of alcohol in LT Lehra's hands. The passenger said, "That's mines."
• At 7:58PM, the defendant spoke to LT Lehra about the accident. During that conversation, LT Lehra asked, "And you were driving?" The defendant replied, "And I was on the driver's side."
• At 7:59PM, the defendant had his back to a brick wall and was surrounded in a semi-circle by responding officers. The defendant stated that he wanted to go home and gestured that the location was nearby. One responding officer stated that was not possible and began listing the indicia of intoxication he was contemporaneously observing the defendant to exhibit. Shortly thereafter, the defendant was placed in handcuffs.
P.O. Johery Garcia Rosario
P.O. Garcia Rosario testified to the following:
P.O. Garcia Rosario has worked as an NYPD patrol officer for one and a half years at the 41st Precinct. P.O. Garcia Rosario has made forty-seven arrests and participated in 100 others. P.O. Garcia Rosario has arrested one person for driving while intoxicated and assisted in three or four other arrests of this kind. P.O. Garcia Rosario was trained at the Police Academy to recognize the signs of someone under the influence of alcohol, and in his professional and personal lives he has observed others become intoxicated after consuming alcohol.
On June 8, 2024, at approximately 6:40PM, P.O. Garcia Rosario was on duty, in uniform and assigned to a marked vehicle with his partner, P.O. Kahn. At the time, P.O. Garcia Rosario heard over the radio that a fellow officer had someone in custody. P.O. Garcia Rosario decided to go to the scene to ensure that everyone was okay because he heard a lot of noise in the background on the radio.
When P.O. Garcia Rosario arrived at East 156th Street and Garrison Avenue, he saw a person in handcuffs who he identified as the defendant. The defendant was acting "a little erratic" and had slurred speech. When the defendant walked into the car, he stumbled a little. The defendant's eyes were red and a somewhat watery.
P.O. Garcia Rosario transported the defendant to the 45th Precinct. During transport, P.O. Garcia Rosario observed the defendant had slurred speech; smelled strongly of alcohol; and was acting erratically by yelling and repeatedly asking why he was being arrested after he had already been told the reason.
At approximately 7:45PM, P.O. Garcia was present in the IDTU room at the 45th Precinct. There, he observed the defendant being offered a chemical breath test which he consented to taking, and the administration and results of that test showing a .21% blood alcohol content. P.O. Garcia also observed the administration of a horizontal gaze nystagmus test and physical coordination tests to the defendant. Based on his observations, training, and experience, P.O. Garcia concluded the defendant was highly intoxicated.
BWC Footage of P.O. Garcia Rosario
The Court reviewed the entirety of P.O. Garcia Rosario's BWC and particularly notes the [*5]following:
• At 7:03PM, when P.O. Garcia Rosario arrived at the scene, the defendant was already handcuffed. Shortly thereafter, the defendant, without stumbling, was placed into a marked patrol vehicle by another officer.
• At 7:07PM, P.O. Garcia Rosario entered the front passenger seat of the marked patrol vehicle in which the defendant had been placed. The defendant's speech was slurred, and he repeatedly asked why he was arrested.
• Between 7:08PM and 7:21PM, the defendant was being transported to the 45th Precinct. The defendant talked and cursed frequently, and his comments were disjointed.
IDTU Video
The Court reviewed the entirety of the IDTU video and particularly notes the following:
• At 8:19PM, the defendant consented to take the breath test.
• At 8:22PM, the machine indicates a .21% blood alcohol content from the defendant's blow.
• At 8:24PM, an eye nystagmus test was conducted.
• Between 8:30 and 8:32 p.m., the defendant performed the physical coordination tests offered by the IDTU officer.
• At 8:33PM, the officer attempted to give the defendant Miranda warnings but stopped when the defendant does not respond to the initial questions.
III. CONCLUSIONS OF LAW
The Court finds LT Lehra and P.O. Garcia credible and that they testified from memory truthfully. Although LT Lehra's testimony was at times disjointed and conflicted with his body-worn camera, such inconsistencies and sequencing errors are understandable given the passage of time between the event in question and the date of LT Lehra's testimony. These inconsistencies did not impact LT Lehra's overall credibility, although the Court affords more weight to the contemporaneous record in the BWC footage and IDTU video.
Dunaway
An arrest without a warrant is presumed to be illegal (Broughton v State, 37 NY2d 451, 458 [1975] ["Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful"]). When defense challenges the validity of the warrantless arrest in a suppression hearing, the People have "the burden of coming forward with evidence showing that there was probable cause for the arrest" (People v Parris, 83 NY2d 342, 346 [1994]). "[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court" (Mapp v Ohio, 367 U.S. 643, 654 [1961]; see also Dunaway v New York, 44 U.S. 200 [1979]).
For a Dunaway hearing in the context of Vehicle and Traffic Law § 1192, "[t]he standard to be followed is that it is more probable than not that defendant is actually impaired" (People v Vandover, 20 NY3d 235, 239 [2012]. For a Vehicle and Traffic Law § 1192 (1) offense, "driving a motor vehicle while there is any alcoholic impairment of the driver's 'ability to operate such [*6]vehicle' would constitute a violation" (People v Cruz, 48 NY2d 419, 426 [1979]). Indicia of impairment include a suspect's speech patterns "even if the suspect's speech is not obviously slurred" (People v Millet, 57 Misc 3d 1225[A]*3 [Crim Ct New York County 2017]).
When coupled with a traffic accident that took place outside of police presence, Vehicle and Traffic Law § 1194 (1) (a) states that "a police officer may, without a warrant, arrest a person in case of a violation of [Vehicle and Traffic Law § 1192 (1)], if such violation is coupled with an accident or collision in which such person is involved, which in fact has been committed, though not in the police officer's presence, when the officer has reasonable suspicion to believe that the violation was committed by such person." Thus, if it is more probable than not that a person was impaired by the consumption of alcohol, the police may make an arrest pursuant to Vehicle and Traffic Law § 1192 (1) without having witnessed the accident. "[T]he legality of an arrest must be independently determined by the courts upon the actual facts and circumstances known to the officer . . . [the officer's] subjective belief as to the existence of probable cause is not dispositive" (People v Lopez, 95 AD2d 241, 250 [2d Dept 1983]; see also People v Robinson, 271 AD2d 17, 24 [1st Dept 2000]). "Further, the fact of an accident may be construed to circumstantially suggest diminished motor control or impaired driving judgment by reason of alcohol consumption, without regard to proof of fault" (People v Maher, 52 Misc 3d 136[A]*2 [App Term, 2d Dept, 9th and 10th Jud Dists 2016]).
For a Vehicle and Traffic Law § 1192 (2) or (3) offense, "[t]he standard for determining intoxication is whether the consumption of alcohol has rendered [the defendant] incapable of performing the various mental or physical acts which an average person would be able to do" (Matter of Johnston, 75 NY2d 403, 409 [1990], referencing Cruz at 426). "Intoxication . . . 'is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a motor vehicle as a reasonable and prudent driver.'" (Id., citing Cruz at 428). Indicia of intoxication frequently include the subject's physical appearance, conduct and demeanor, responsiveness, speech patterns, coordination and balance, an odor of alcohol on the subject's breath, the presence of alcohol in the vehicle or on the subject's person, and any admission from the subject regarding consumption of alcohol. However, the ultimate question of whether the extant indicia rise to the level of probable cause is a "mixed question of law and fact" (People v Vandover, 20 NY3d 235 at 237).
Regarding operation, LT Lehra's BWC shows that when officers approached the defendant on scene, the defendant stated, "He fucking hit me, and he left" and "I hit the car and ended up hitting the pole in trying to swerve." Shortly thereafter, the defendant attempted to enter the driver's seat of the vehicle and said, "I'm just trying to make it to my house." Later, the defendant admitted that he was "in the driver's side" when the accident occurred. Based on this, the Court finds that it is more probable than not that the defendant operated the motor vehicle.
The evidence also establishes that when the officers first arrived at the scene, it was more probable than not that the defendant was impaired by alcohol and intoxicated. LT Lehra testified that he detected the strong smell of alcohol on the defendant and that the defendant slurred his speech, observations corroborated by P.O. Rosario. Moreover, LT Lehra's BWC shows that defendant's speech was slurred, and that the defendant outright avoided or provided partial answers to investigatory questions. Finally, the significant damage to the defendant's vehicle resulting from a collision closely preceding the officers' arrival provides additional circumstantial evidence that the driver was intoxicated or impaired.
For the foregoing reasons, the defendant's motion to invalidate the defendant's arrest because it lacked probable cause is 
DENIED.
Huntley
The People have the burden of proving beyond a reasonable doubt that the defendant's statements were voluntary (see People v Anderson, 42 NY2d 35, 38 [1977]; People v Huntley, 15 NY2d 72 [1965]; People v Johnson, 139 AD3d 967 [2d Dept 2016]). When a person suspected of a crime is taken into custody or significantly deprived of freedom, Miranda warnings must be administered if he or she is to be interrogated (Miranda v Arizona, 384 U.S. 436 [1966]). Importantly, the subjective beliefs of neither a defendant nor the arresting officer is dispositive of custody. Instead, the test is an objective one of "what a reasonable [person], innocent of any crime, would have thought had [they] been in the defendant's position" (People v Yukl, 25 NY2d 585, 589 [1969]).
Although not binding on this court, the factors set forth in People v Forbes (182 AD2d 829, 829-830 [4th Dept 1992]) provide a useful framework to determine whether a defendant was in custody: "(1) the amount of time the defendant spent with the police, (2) whether [the defendant's] freedom of action was restricted in any significant manner," (3) the location and atmosphere in which the defendant was questioned, (4) the degree of cooperation exhibited by the defendant, (5) whether [the defendant] was apprised of his constitutional rights, and (6) whether the questioning was investigatory or accusatory in nature." Applying those factors to the instant case, the court finds that the defendant was in custody at approximately 6:59PM on LT Lehra's BWC, when the defendant tells police he wants to go home but visibly cannot because he is surrounded by officers, one of whom then recites his contemporaneous observations of the indicia of the defendant's intoxication to the defendant, himself. At that point, a reasonable, innocent person would not feel free to leave because his freedom of action was curtailed while police explained their basis for concluding he was intoxicated shortly after having admitted driving and been in a motor vehicle accident.
However, prior to this point, a reasonable, innocent person in the defendant's situation would have thought the police were "'still in the process of gathering information about the [accident] prior to taking any action'" (People v Carbonaro, 134 AD3d 1543, 1547 [4th Dept 2015], quoting People v Dillhunt, 41 AD3d 327, 328 [2007], lv denied 12 NY3d 860 [2009]; see also People v Borukhova, 89 A,D,3d 194 [2d Dept 2011] [Defendant not in custody "[a]lthough questioning at the police station was more extensive, [as] it remained investigative, not accusatory, in nature and was not continuous]) and that any restriction on his movement stemmed from the need to remain with his disabled vehicle until it could be removed from the accident scene in the middle of the road, not as a result of police action.
Additionally, the defendant's proffered explanation for the accident and subsequent conduct prompted a need for the police's continued investigatory questioning. Throughout his interaction with police, the defendant maintained that another car hit him. However, when asked reasonable follow up questions by the officer, the defendant was nonresponsive or partially responsive, instead returning to the refrain that someone hit him. When asked about the other party to the accident, the defendant provided the officers with no details as to the other automobile, driver, or location.
The defendant's statement as heard on LT Lehra's BWC, "And I was on the driver's side" [*7]— sufficiently congruent in sum and substance, although not identical to the noticed statement — occurred at 6:58PM. At that time, the defendant had been with the police for less than fifteen minutes; his movements were not significantly restricted; and his demeanor towards the officers was cooperative even if his answers were evasive. Additionally, nothing in LT Lehra's BWC shows the police threatening or inducing the defendant at any point. Applying the Forbes factors, the court finds that the defendant's statements were voluntarily made; that the defendant not in custody when he made the statement at issue; and that Miranda rights were not required.
For the foregoing reasons, the defendant's motion to suppress the noticed statement is 
DENIED.
Mapp
The defendant also moves to suppress police observations of the alcohol bottles inside his vehicle, the IDTU video, and the results of the chemical breath test, arguing that police lacked probable cause.
In a Mapp hearing to suppress tangible evidence, the People have the initial burden of showing that there was probable cause to arrest the defendant. The burden then shifts to the defendant to prove by a preponderance of the evidence that the police acted illegally (People v. Berrios, 28 NY2d 361, 367 [1971]).
In this case, the police had probable cause to arrest the defendant prior to LT Lehra opening the driver's side door of the vehicle and observing two small bottles of alcohol in the compartment on the side of the door. As stated above, the police arrived at the scene of a motor vehicle accident where the defendant alleged another driver hit his car and fled. During that interaction, the defendant displayed several indicia of intoxication and impairment by alcohol. Less than a minute after police arrival, the defendant attempted to enter the driver's side of the vehicle, presumably to leave the scene. Although the defendant was not under arrest at this time (see, 'Huntley' section above), the police had probable cause to believe he had operated the vehicle in an intoxicated condition and while his ability was impaired by the consumption of alcohol. "So long as there is probable cause, the fact that a search occurs before the formal arrest does not vitiate the search" (People v Davis, 192 AD2d 360, 362 [1st Dept 1993] [referencing People v Landy, 59 NY2d 369, 377 (1983)]).
Similarly, police observations of the defendant following the arrest, including at the IDTU, and the results of the chemical breath test were supported by probable cause (see, "Dunaway" section above). Accordingly, the defendant's motion to suppress police officer observations, the IDTU video, and the chemical breath test is 
DENIED.
The foregoing constitutes the decision and order of the Court.
Dated: 6 June 2025
Bronx, New York
DANIEL M. LEWIS, J.C.C